Anthony F. EASON, Appellant,

v.

**UNITED STATES, Appellee.**

No. 95–CF–4.

District of Columbia Court of Appeals.

Argued Oct. 15, 1996.

Decided Dec. 19, 1996.

---

Neal L. Thomas, Washington, DC, for appellant.

John Crabb, Jr., Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Elizabeth Trosman, and Miriam M. Smolen, Assistant United States Attorneys, were on the brief, for appellee.

Before SCHWELB and FARRELL, Associate Judges, and NEWMAN, Senior Judge.

NEWMAN, Senior Judge:

Anthony F. Eason was convicted, after a jury trial, of second-degree murder while armed and possession of a firearm while committing a violent or dangerous

crime. On this appeal, Eason argues that the trial court erred in admitting expert testimony on blood spatter[1] from individuals not qualified in the field of blood spatter analysis. Eason also contends the court erred in allowing a witness to give both expert and lay testimony.[2] We affirm.

## I.

On July 11, 1993, Anthony Eason banged and kicked on the door of his neighbor. When she opened the door Eason "blurted out" that he had shot his fiancee, Sabrina Lenear, with whom he lived. After his neighbor called an ambulance and police, Eason went back to his apartment. He later returned to the neighbor's and said that he had shot Lenear because she had hit him in the head with a hammer.

Detective Thomas Campbell of the Metropolitan Police Department Homicide Branch arrived at Eason's apartment and found Lenear "in a supine position on her back with her legs bent underneath her." Lenear had been shot in the left temple. Campbell observed a small tack hammer near the body. A Browning automatic .22 with a sawed off barrel was found in a back pack behind a door in the apartment.

At trial Eason testified that he and Lenear had been fighting, Lenear had swung a hammer at Eason which he knocked out of her hand, and Lenear had retrieved a gun out of the closet. Eason attempted to take the gun out of her hands and during the course of the struggle the gun discharged.

Campbell testified that based on his observations of the position of the body, the blood spatter, and other things on the scene he concluded that Lenear was kneeling when she was shot. Dr. Silvia Comparini, the medical examiner who performed the autopsy, also testified that based on examining the wound and photographs from the crime scene she concluded that Lenear was most likely kneeling.

## II.

Eason argues that the trial court erred in finding Campbell qualified as a blood spatter expert and in allowing Comparini to give an opinion in blood spatter analysis on the basis of her credentials as a forensic pathologist. Because we do not believe the trial court erroneously exercised its discretion, *see Johnson v. United States, supra,* 398 A.2d at 365–67, we disagree and affirm.

■ Witnesses testifying in court can be placed on a sliding scale. Lay witnesses generally testify solely on their personal observations or knowledge[3] while, generally,

---

1. Various authorities use the term "spatter" while others refer to it as "splatter." *See* Robert P. Spalding, *Bloodstain Pattern Evidence and the Evaluation of Violent Crime Scenes,* 28 Prosecutor 13 (May/June 1994) (noting blood dispersed and deposited on target surfaces is "spatter (not splatter)"); Danny R. Veilleux, Annotation, *Admissibility, in Criminal Prosecution, of Expert Opinion Evidence as to "Blood Splatter" Interpretation,* 9 A.L.R. 5th 369 (1993 & 1996 Supp.). For the sake of consistency, we will refer to it as "spatter."

2. Eason also argues that the trial court erred in excluding expert testimony concerning his mental condition. The trial court ruled the testimony irrelevant. " 'The determination of the relevance of proffered evidence is committed to the sound discretion of the trial court.' " *Blakeney v. United States,* 653 A.2d 365, 368 (D.C.1995) (quoting *Street v. United States,* 602 A.2d 141, 143 (D.C. 1992)). We can only overrule the trial judge's ruling "upon a showing of 'grave abuse.' " *Carr v. United States,* 585 A.2d 158, 163 (D.C.1991) (quoting *Roundtree v. United States,* 581 A.2d 315, 328 (D.C.1990)). Evidence is relevant if it

" 'tends to make the existence or nonexistence of a fact more or less probable than would be the case without that evidence.' " *Dade v. United States,* 663 A.2d 547, 552 (D.C.1995) (quoting *Punch v. United States,* 377 A.2d 1353, 1358 (D.C.1977), *cert. denied,* 435 U.S. 955, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978)). Here, Eason sought to introduce the testimony of a mental health professional who would discuss his mental condition after the shooting. Defense argued the testimony would be relevant to the issue of whether the shooting had been intentional or accidental. The trial court ruled the testimony irrelevant, noting that Eason's depression could have been caused by the shooting being an accident or by Eason's having lost his self-control and reacting out of anger. Because Eason has not demonstrated an abuse of discretion, *see Johnson v. United States,* 398 A.2d 354 (D.C. 1979), his argument is without merit.

3. *See Fateh v. Rich,* 481 A.2d 464, 470 (D.C. 1984) (noting that arguably the witness, an alcohol control board member, did not offer opinion testimony but merely testified as to what hap-

expert witnesses testify based on their expertise and knowledge in a field. The more complex the subject matter the more closely we scrutinize the expertise of the witness testifying. In this case we need not decide whether expert testimony in blood spatter was necessary. Both Detective Campbell and Dr. Comparini possessed the requisite knowledge and experience to give the testimony that they gave.

■ The trial judge has "'wide latitude in the admission or exclusion of expert testimony, and his decision with respect thereto should be sustained unless it is manifestly erroneous.'" *In re Melton,* 597 A.2d 892, 897 (D.C.1991) (*en banc*) (quoting *Coates v. United States,* 558 A.2d 1148, 1152 (D.C. 1989)). To be qualified as an expert, "'the witness must have sufficient skill, knowledge, or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth....'" *Dyas v. United States,* 376 A.2d 827, 832 (D.C.) (quoting McCormick on Evidence, § 13 at 29–31 (E.Cleary, 2d ed.1972)), *cert. denied,* 434 U.S. 973, 98 S.Ct. 529, 54 L.Ed.2d 464 (1977).

■ The trial court ruled that Campbell could

> testify in this trial as an expert in the area of the appearance and recognition of blood splatter or spatter, ... and transfer of blood and his conclusions in regard to the positioning of the decedent at the time the blood spatter and transfer that he sees has occurred.

The judge made his ruling after reviewing Detective Campbell's qualifications. Campbell was a member of the Metropolitan Police Department for sixteen years including four years as a homicide detective. He had attended both investigator's school and homicide school where he learned to analyze the position of victims and any blood at homicide scenes. The homicide training included specific instruction and experiments regarding blood spatter. Campbell had worked with more experienced detectives analyzing blood spatter, and he had analyzed it himself at innumerable crime scenes.

The trial judge qualified Detective Campbell to testify as to very narrow grounds. The government clearly stated that Campbell would testify about his analysis of the crime scene based on his experience and training as a homicide detective. When Campbell testified that in his opinion the victim was kneeling when she was shot, he stated that his opinion was based on the position of the body and that in relationship with the blood spatter. Campbell previously testified that he found the victim "lying in a supine position on her back with her legs bent underneath her." He also testified as to the location of the blood spatter on her body including the underside of her foot which led him to believe that at the time of the shooting her feet were not flat on the floor. Finally Campbell testified that he saw no blood spatter on the upper part of the door.

We cannot find that the trial judge abused his discretion in allowing Campbell to testify because his opinion was based on his experience in analyzing crime scenes and his training in recognizing blood spatter and blood transfer[4]. We note that Detective Campbell did not attempt to engage in sophisticated blood spatter analysis involving more compli-

---

pened at a meeting and how the board reacted to the parties' presentation—evidence which bore on the argument that the parties' own conduct estopped them from asserting a license transfer condition). We stated in that case:

> Modern rules of evidence permit non-expert witnesses to express opinions as long as those opinions are based on the witness' own observation of events and are helpful to the jury. Moreover, such testimony is not inadmissible simply because it embraces an ultimate issue to be decided by the trier of fact.

*Id.* at 470 (citations omitted). *Accord* Fed. R.Evid. 701.

4. Blood spatter refers to blood which is ejected from the body after force has been applied. Blood transfer or smudge occurs when something comes into contact with blood and smears it on a surface. For example, a hand which touches spatter and then smears it across a surface or makes a mark on a wholly new surface creates a blood transfer or smudge. *See generally* Maj. Samuel J. Robb, *A Trial Attorney's Primer on Blood Spatter Analysis,* The Army Lawyer 36, 38 (August 1988) (defining blood spatter terminology).

cated calculations or experiments.[5] His testimony concerned only the location of spatter and transfers, the direction of the drip, and his opinion as to the position of the body based both on the spatter and his visual observations of the victim at the scene.

■ The court similarly allowed Dr. Comparini to testify that in her opinion the victim was most likely kneeling because her head had to be at a lower level when the gun was fired. Comparini based her opinion on photographs of the victim on the scene. She noted that there were blood spatters on the lower portion of the door. She pointed out how the blood dripped onto the body consistent with the victim kneeling. Comparini further testified that in performing her autopsy she observed a muzzle imprint and soot at the site of the wound indicating the muzzle of the gun was right against the skin. Comparini also discussed the trajectory of the bullet once inside the victim's head.

The trial court allowed this testimony after Comparini's qualifications had been reviewed. She had been a deputy medical examiner for ten years. She had studied and practiced anatomic and clinical pathology and serology. She had conducted at least 2,000 autopsies involving gunshot wounds and witnessed another 12,000 autopsies. Based on her experience we cannot find the court erroneously exercised its discretion in allowing her to testify as to the position of the victim at the time of the gunshot.

### III.

■ Appellant maintains the trial court erred in allowing Campbell to give both expert and lay testimony under *Beach v. United States,* 466 A.2d 862 (D.C.1983). Campbell testified extensively as a fact witness as to matters he observed at the scene of the shooting. At the bench, appellant's counsel expressed his concern about where Campbell's testimony was headed:

> I don't know what his anticipated testimony is going to be concerning the exhibits, but if we're going to get into blood splatter analysis or something like that I want to make sure that he has established his credentials to be able to be an expert on that.

Campbell then was qualified as an expert in the appearance and recognition of blood spatter, transfer of blood, and the position of decedent at the time of the blood spatter and transfers occurred. After concluding his "expert" testimony on the blood spatter and location of the victim, Campbell gave additional lay testimony on topics not related to the blood spatter issue. Appellant never objected to Campbell testifying as both a lay and expert witness.

In *Beach* this court held that it was error for the trial court to allow a witness to testify as both an expert and lay witness. A detective testified both as the arresting officer in a drug deal and as an expert on the use of narcotics. There we were concerned about the danger that the appellant would be prejudiced because the detective's credibility as a lay witness was bolstered by his testifying as an expert. *Id.* at 865. However, we found the error to be harmless. *Id.*

We recognize that we are bound by *Beach. See M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971). This does not, however, constrain us from noting that in *Beach* we cited nothing as authority for this holding.[6] Nor does a rationale occur to us now which would justify the bright line rule we adopted in *Beach* as distinguished from the discretionary one which we rejected there.[7]

---

5. *See generally* Cathleen C. Herasimchuk, *A Practical Guide to the Admissibility of Novel Expert Evidence in Criminal Trials under Federal Rule 702,* 22 St. Mary's L.J. 181, 246 (1990) (noting blood spatter analysis has recently become an accepted area for expert witness testimony and that "[w]hile the scientific theory and techniques employed in blood spatter analysis depend upon a subjective interpretation, the testimony deals with evidence that is inherently understandable"). *Cf.* 3 C. Wecht, *Forensic Sciences,* §§ 37.03[c]—[f], 37.04–.09 (1996) (suggesting formal scientific training may be necessary for blood spatter analysis involving calculations of velocity, volume and trajectory, and geometric determinations).

6. The authoring judge of this opinion regretfully recognizes that he was a member of the panel which decided *Beach.*

7. We also note *Beach* is not the law for the United States Court of Appeals for the District of Columbia Circuit. *See United States v. Catlett,* 97 F.3d 565, 570–71 (D.C.Cir.1996) ("[W]e have

One of the bases of expert opinion is facts (evidence) personally observed by the expert. *Hartford Accident and Indem. Co. v. Dikomey Mfg. Jewelers, Inc.*, 409 A.2d 1076, 1081 (D.C.1979) ("Knowledge based on personal inspection or observation is always preferred, but it is not the sole admission ticket for an expert's opinion."). When that expert is called as a witness, she testifies both as to her opinion and its basis, including evidentiary facts observed by her.[8] This is no different from what occurred in this case.

Be that as it may, in *Beach*, after adopting a bright line test, we found the trial court's error in permitting both lay and expert testimony from the same witness to be harmless. Even assuming that objection had been made, and we were reviewing under the harmless error rather than plain error test, we would find it harmless here because "we can say 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.'" *Id.* at 865 (quoting *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946)). The government presented a strong case on this

point even without Campbell's "expert" testimony. Eason had admitted shooting Lenear in the head and the autopsy established Lenear had been shot while the gun was against her head.[9]

*Affirmed.*

---

never adopted the rule that dual testimony as both a fact and expert witness is improper."). *Catlett* involved trial strategies strikingly similar to the ones involved in this case. In *Catlett* a police officer was questioned at trial about the typical operations of drug dealers. Defense counsel objected, arguing this was opinion testimony that could only be offered if the officer was qualified as an expert. Presumably defense counsel thought the District Court would never qualify the officer as an expert, but the court did qualify him. The Court of Appeals held that appellants could not turn around and claim ineffective assistance of counsel because a *Beach* objection might have been more successful in blocking the testimony since *Beach* was not the law of the circuit.

The D.C. Circuit is not alone. Every federal court considering the issue has concluded that the Federal Rules of Evidence permit dual testimony as both a fact and expert witness. *Id.* at 571–72 ("*See United States v. Thomas*, 74 F.3d 676, 683 (6th Cir.) (refusing to adopt a *per se* prohibition on using an officer as both a fact and expert witness), *cert. denied*, — U.S. —, 116 S.Ct. 1558, 134 L.Ed.2d 659 (1996); *United States v. Foster*, 939 F.2d 445, 450–52 (7th Cir. 1991) (allowing dual testimony but urging care to avoid jury confusion); *United States v. Young*, 745 F.2d 733, 760 (2d Cir.1984) (finding it was not improper for the government to elicit expert

testimony from officers who testified as fact witnesses), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985).").

8. In a given case a witness may give critical factual (lay) testimony and testify only secondarily as an expert. In such a case an instruction may be necessary to insure the jury understands the difference. In *Beach* the trial judge gave such an instruction pointing out to the jury that the detective "testified in a dual capacity" and urging the jury to evaluate his testimony separately. 466 A.2d at 863–64 n. 2. *See also United States v. Foster*, 939 F.2d 445, 452 (7th Cir.1991) ("When the expert witness also serves as an eyewitness, the district court and the prosecutor should exercise special caution to ensure that the jury understands its function in evaluating the evidence and is not confused by the witness's dual role."); *United States v. DeSoto*, 885 F.2d 354, 359–61 (7th Cir.1989) (holding trial court did not abuse its discretion when it allowed police lieutenant to testify both as an eyewitness to the alleged drug dealing and as an expert on law enforcement and drug dealer methodology where trial court admonished the jury to assess the weight of the expert opinion in light of all the evidence).

9. Indeed, it is difficult to postulate a set of facts where such "error" would not likely be harmless.