OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 This appeal centers on the intersection of two important interests: the prosecution of drunk drivers, and the constitutional privilege against self-incrimination.
 

 In order to determine whether a driver is intoxicated, police officers frequently supplement their observational skills with field sobriety tests such as the “walk and turn” and “one-leg
 
 *703
 
 stand,” as well as chemical analysis tests of the driver’s blood or breath. In a subsequent criminal trial, can the State introduce the results of these tests, or evidence of a defendant’s refusal to take them, when a defendant does not receive
 
 Miranda
 
 warnings prior to the request to take the tests?
 

 It is settled that
 
 Miranda
 
 warnings are not required to allow the results of field sobriety tests into evidence
 
 (People v Hager,
 
 69 NY2d 141, 142;
 
 People v Jacquin,
 
 71 NY2d 825, 826). It is also settled that
 
 Miranda
 
 warnings are not required in order to admit the results of chemical analysis tests, or a defendant’s refusal to take such tests
 
 (Schmerber v California,
 
 384 US 757, 761;
 
 South Dakota v Neville,
 
 459 US 553, 564;
 
 People v Thomas,
 
 46 NY2d 100, 103,
 
 appeal dismissed
 
 444 US 891). The open question before this Court today is whether evidence of defendant’s refusal to submit to certain field sobriety tests was also admissible in the absence of
 
 Miranda
 
 warnings. We conclude that it was, because the refusal was not compelled within the meaning of the Self-Incrimination Clause.
 

 According to testimony adduced at a
 
 Huntley
 
 hearing, in the early morning on September 30, 1995, defendant drove her car into a ditch in Sand Lake, New York, near the residence of an off-duty State Trooper. The noise from the accident and defendant’s subsequent attempts to remove the car from the ditch woke the Trooper, who went outside to investigate. Defendant asked him to help her return the car to the road, and not to call the police. The Trooper smelled alcohol on defendant’s breath and observed that her eyes were glassy and her speech slurred. After a short time, defendant left the accident scene and began walking up the road. The Trooper summoned the State Police, and along with the responding officer found defendant down the road hiding in the bushes.
 

 The officers brought defendant back to the accident scene, and the on-duty Trooper then accompanied her to her home to obtain her driver’s license. When he learned that defendant had used a false identity he took her to the police station, where he asked her to perform four field sobriety tests: recitation of the alphabet; the horizontal gaze nystagmus test; the walk and turn; and the one-leg stand. After defendant refused to perform the test.s, the officer placed her under arrest and administered
 
 Miranda
 
 warnings.
 

 Defendant subsequently was indicted for the crimes of driving while intoxicated (as a felony) and aggravated unlicensed operation of a motor vehicle. After a
 
 Huntley
 
 hearing, County
 
 *704
 
 Court ruled that evidence of defendant’s refusal to take the tests was inadmissible because defendant had not received
 
 Miranda
 
 warnings. The Appellate Division reversed, holding that
 
 Miranda
 
 warnings were unnecessary. We now affirm, because defendant’s refusal to perform the field sobriety tests was not compelled, and therefore was not the product of custodial interrogation.
 

 Both the State and Federal Constitutions guarantee that individuals shall not “be compelled in any criminal case to be a witness against” themselves (NY Const, art I, § 6; US Const 5th Amend). In
 
 Miranda v Arizona
 
 (384 US 436, 461), the United States Supreme Court held that the privilege against self-incrimination protects individuals from “informal compulsion exerted by law-enforcement officers during in-custody questioning” as well as from legal compulsion to testify in court. In order to preserve this right, the Court prescribed “procedural safeguards effective to secure the privilege against self-incrimination” in the form of the now-familiar
 
 Miranda
 
 warnings (id., at 444).
 

 There are, however, two significant limitations on the application of
 
 Miranda.
 
 First, while an accused may not be compelled to “provide the State with evidence of a testimonial or communicative nature,” a person can be forced to produce “ ‘real or physical evidence’ ”
 
 (Schmerber v California,
 
 384 US 757, 761, 764,
 
 supra).
 
 Second, because the privilege applies only when an accused is “compelled” to testify, the safeguards required by
 
 Miranda
 
 are not triggered unless a suspect is subject to “custodial interrogation”
 
 (Miranda v Arizona, supra,
 
 384 US, at 444).
 

 For evidence to be testimonial or communicative, it “must itself, explicitly or implicitly, relate a factual assertion or disclose information”
 
 (Doe v United States,
 
 487 US 201, 210). While evidence that “reveal[s] a person’s subjective knowledge or thought processes” is testimonial or communicative
 
 (People v Hager,
 
 69 NY2d 141, 142,
 
 supra),
 
 such is not the case when a suspect is “not required ‘to disclose any knowledge he might have,’ or ‘to speak his guilt’ ”
 
 (Doe v United States, supra,
 
 487 US, at 211 [citations omitted]). This is because the policies behind the Self-Incrimination Clause “are served when the privilege is asserted to spare the accused from having to reveal, directly or indirectly, his knowledge of facts relating him to the offense or from having to share his thoughts and beliefs with the Government”
 
 (id.,
 
 at 213).
 

 
 *705
 
 Results of field sobriety tests such as the horizontal gaze nystagmus, walk and turn and one-leg stand are not deemed testimonial or communicative because they “do not reveal a person’s subjective knowledge or thought processes but, rather, exhibit a person’s degree of physical coordination for observation by police officers”
 
 (People v Hager, supra,
 
 69 NY2d, at 142;
 
 see also, People v Jacquin,
 
 71 NY2d 825, 826,
 
 supra).
 
 Responses to such tests incriminate an intoxicated suspect “not because the tests [reveal] defendant’s thoughts, but because [defendant’s] body’s responses [differ] from those of a sober person”
 
 (People v Hager, supra,
 
 69 NY2d, at 142). Thus, the results of such tests may be introduced despite the failure of the police to administer
 
 Miranda
 
 warnings.
 

 As part of a request to perform field sobriety tests, suspects may also be asked to count or recite the alphabet without invoking the privilege against self-incrimination. Although these tasks are verbal, that alone does not render them testimonial or communicative
 
 (see, e.g., United States v Dionisio,
 
 410 US 1, 7;
 
 Pennsylvania v Muniz,
 
 496 US 582, 592). Reciting the alphabet and counting are not testimonial or communicative because these acts do not require a person to reveal knowledge of facts relating to the offense or to share thoughts and beliefs with the government. Instead, these tests attempt to determine whether alcohol has impaired the reflexive process by which the alphabet and numbers are recalled from memory and spoken
 
 (see, People v Hasenflue,
 
 252 AD2d 829, 830-831,
 
 lv denied
 
 92 NY2d 982;
 
 Vanhouton v Commonwealth,
 
 424 Mass 327, 335-337, 676 NE2d 460, 466 [citing cases];
 
 see also, Pennsylvania v Muniz, supra,
 
 496 US, at 603, n 17 [leaving open the question whether counting during a field sobriety test is testimonial]).
 

 While the
 
 results
 
 of the field sobriety tests defendant was asked to perform are not testimonial or communicative, we do not in this case address whether defendant’s
 
 refusal
 
 to perform the tests was also non-testimonial. Rather, we decide this case on the ground that the refusal was not the product of custodial interrogation — a conclusion that alone resolves this appeal. In keeping with the constitutional mandate against compelled self-incrimination, custodial interrogation “must reflect a measure of compulsion above and beyond that inherent in custody itself’
 
 (Rhode Island v Innis,
 
 446 US 291, 300). Because such compulsion was lacking here, the safeguards outlined in
 
 Miranda
 
 were not implicated.
 

 The analysis used by this Court in
 
 People v Thomas
 
 (46 NY2d 100,
 
 appeal dismissed
 
 444 US 891,
 
 supra)
 
 and the Supreme
 
 *706
 
 Court in
 
 South Dakota v Neville
 
 (459 US 553, supra) in the context of chemical analysis tests is also persuasive in the context of field sobriety tests. As with defendants in those cases, there was no direct compulsion on this defendant to refuse to perform the field sobriety tests. On the contrary, the officer wanted defendant to take the tests, since the inference of intoxication arising from failure to complete the tests successfully “is far stronger than that arising from a refusal to take the test”
 
 (id.,
 
 at 564).
 

 Moreover, “[a]s an alternative to refusal, defendant had a legitimate option available to [her], the choice of which would have involved no forfeiture of a constitutional privilege or a statutory right”
 
 (People v Thomas, supra,
 
 46 NY2d, at 108): she could have performed the tests. Because the results of field sobriety tests are not testimonial or communicative, the State can request that she take them without invoking the Self-Incrimination Clause
 
 (People v Hager,
 
 69 NY2d 141, 142,
 
 supra; People v Jacquin,
 
 71 NY2d 825, 826,
 
 supra).
 
 Thus, defendant’s refusal was not the product of a legally cognizable compulsion, and there is no constitutional bar to its admissibility
 
 (People v Thomas, supra,
 
 46 NY2d, at 106).
 

 Defendant attempts to distinguish
 
 Thomas
 
 on the ground that a statute specifically authorizes the admissibility of evidence of a refusal to submit to a chemical analysis test, while no such statute authorizes the admissibility of refusal evidence in the context of field sobriety tests
 
 (see,
 
 Vehicle and Traffic Law § 1194 [2] [f]). That distinction is constitutionally insignificant, as the admissibility of evidence in the face of the Self-Incrimination Clause does not turn on the presence or absence of such a statute. Even if a statute expressly authorized the use of evidence of a defendant’s refusal to submit to field sobriety tests, that statute would not be enforceable if the State or Federal Constitutions mandated a contrary result. Likewise, if evidence is constitutionally permissible, the absence of authorization in a statute does not make it impermissible.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Judges Bellacosa, Smith, Levine, Ciparick, Wesley and Rosenblatt concur.
 

 Order affirmed.