Filip KARAMYCHEV, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 98–CT–759.

District of Columbia Court of Appeals.

Argued April 12, 2001.

Decided May 10, 2001.

Bruce E. Gardner, appointed by the court, for appellant.

Sidney R. Bixler, Assistant Corporation Counsel, with whom Robert R. Rigsby, Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, Lutz Alexander Prager, Assistant Deputy Corporation Counsel, and Rosalyn Calbert Groce, Assistant Corporation Counsel, were on the brief, for appellee.

Before STEADMAN, SCHWELB, and REID, Associate Judges.

SCHWELB, Associate Judge:

Following a bench trial, Filip Karamychev was convicted of driving a motor vehicle while under the influence of intoxicating liquor (DUI), in violation of D.C.Code § 40–716(b) (1998). On appeal, he contends that the results of three roadside sobriety tests administered to him on the scene should have been suppressed on *Miranda*[1] grounds. Karamychev also claims that the arresting officer should not have been permitted to testify as an expert regarding the administration of one of

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

these tests. Finally, Karamychev asserts that the evidence was insufficient to support his conviction. We affirm.

## I.

Officer Ephriam Williams, then a twelve-year veteran of the Metropolitan Police Department, testified that on October 31, 1997, at about 3:15 a.m., he was on patrol in the area of Connecticut Avenue and M Street, N.W., in Washington, D.C. Suddenly, Officer Williams heard the screeching of tires. Turning his attention to the source of the noise, Williams saw a two-door Mitsubishi automobile make a right turn onto M Street, which is one-way westbound at that location. The Mitsubishi then proceeded east on M Street, against the flow of traffic, at what Officer Williams described as a "high rate of speed." Williams was able to stop the vehicle after it had travelled about two blocks in the wrong direction.

The driver of the Mitsubishi turned out to be appellant Filip Karamychev, then eighteen years of age. Karamychev, a native of Russia, testified that he had been in the United States approximately four or five years, "off and on." [2] When Officer Williams approached the Mitsubishi, he detected "a strong odor of alcohol emanating from the vehicle." Officer Williams ordered Karamychev to step out of the car.

According to Williams, Karamychev's eyes "seemed reddish," his speech "was kind of loud," and he "seemed to have a problem maintaining his balance."

Suspecting that Karamychev may have been drinking, Officer Williams proceeded to administer three roadside sobriety tests, including the horizontal gaze nystagmus (HGN) test, the "walk and turn" test, and the "one-leg stand" test.[3] These tests are designed to determine whether the motorist's physical coordination has been affected by consumption of intoxicating liquor. According to Officer Williams, Karamychev's performance on each of these tests indicated that he was under the influence of alcohol.

Officer Williams placed Karamychev under arrest and transported him to the Second District station house. Williams testified that, at the police station, Karamychev's breath still smelled of alcohol. Williams read Karamychev the "Implied Consent Form," PD 29, which contains an explanation of the consequences of a suspect's refusal to take certain chemical tests for the presence of alcohol, including the "breathalyzer." According to Williams, Karamychev declined to consent to the tests. Karamychev was then formally charged with DUI.

At his trial, Karamychev took the witness stand in his own defense. He stated

---

2. The trial transcript reveals that Karamychev speaks English fluently and colloquially.

3. The "horizontal gaze nystagmus" test measures the extent to which a person's eyes jerk as they follow an object moving from one side of the person's field of vision to the other. The test is premised on the understanding that, whereas everyone's eyes exhibit some jerking while turning to the side, when the subject is intoxicated "the onset of the jerking occurs after fewer degrees of turning, and the jerking at more extreme angles becomes more distinct." 1 R. Erwin et al., Defense of Drunk Driving Cases § 8A.99, pp. 8A–43, 8A–45 (1989). The "walk and turn" test requires the subject to walk heel to toe along a straight line for nine paces, pivot, and then walk back heel to toe along a straight line for another nine paces. The subject is required to count each pace aloud from one to nine. The "one leg stand" test requires the subject to stand on one leg with the other leg extended in the air for 30 seconds, while counting aloud from 1 to 30. *Pennsylvania v. Muniz*, 496 U.S. 582, 585 n. 1, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990) (plurality opinion).

that on the evening of October 30, 1997, he and some friends were having a party at a bar near Dupont Circle. Karamychev acknowledged that between 8 p.m. and 9 p.m., he had consumed five or six bottles of beer. He claimed, however, that he had no more to drink thereafter, except that before the group left the bar at about 2:15 a.m., "I took just one sip to make my throat wet."

Karamychev stated that as he was driving his friends home, and apparently travelling west on M Street, one of the passengers told Karamychev that the group's destination, Catholic University, was in the other direction. Karamychev testified that he turned the vehicle around and that, shortly thereafter, he was stopped by the police. Karamychev asserted that, at Officer Williams' direction, he performed roadside sobriety tests; he believed that he had performed well on all of them. Officer Williams apparently thought otherwise, however, and Karamychev was arrested for DUI and taken to the police station. Karamychev denied that he refused to take the breathalyzer test. According to Karamychev, Officer Williams read the informed consent form to him far too rapidly. The officer refused Karamychev's request that he proceed more slowly, and Karamychev did not understand what his rights were. Karamychev admitted that he did not affirmatively agree to have the breathalyzer test administered to him.

The trial judge found Karamychev guilty as charged. The judge credited Officer Williams' testimony, and he expressly disbelieved Karamychev's evidence on two contested points.[4] This appeal followed.

## II.

Karamychev filed a pretrial motion to suppress, on *Miranda* grounds, his statements to the police, as well as what he characterized as his "non-verbal communications," *i.e.*, his performance of the roadside sobriety tests. The trial judge suppressed Karamychev's oral statements, but he denied the motion with respect to the results of the roadside tests. On appeal, Karamychev claims that his "non-verbal communications" should have been suppressed because, at the time that the sobriety tests were administered to him, the police had not advised him of his constitutional rights.

■■■ Karamychev's claim of a *Miranda* violation fails for two discrete reasons. First, an individual who has been temporarily detained for a traffic stop generally is not considered to be "in custody" for purposes of *Miranda*. *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). In *Pennsylvania v. Bruder*, 488 U.S. 9, 9–11, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988) (per curiam), the Court summarily held, on the authority of *Berkemer*, that a motorist's response to a direction that he recite the alphabet, as well as his performance on sobriety tests, were properly received in evidence. The Court indicated that the police officer had no obligation to advise the motorist, before administering the tests, of the motorist's rights pursuant to *Miranda*. We conclude that *Berkemer* and *Bruder* are controlling here, that Karamychev was not in custody, and that *Miranda* warnings therefore were not required.

---

4. The judge told Karamychev that the court "just does not believe you when you say you had four or five beers in an hour and then had nothing to drink for another five plus hours." The judge also refused to credit Karamychev's assertion that the officer rushed him through the informed consent procedure in regard to the breathalyzer test, for "[i]t makes no sense [from] the [c]ourt's point of view that the officer would zip through your rights in a hurry."

■ Second, Karamychev's performance of the roadside sobriety tests was not testimonial, and *Miranda*, which is based on the Fifth Amendment privilege against self-incrimination, has no application. In *Schmerber v. California*, 384 U.S. 757, 764–65 (1966), the police directed a physician to take a blood sample from Schmerber's body in order to analyze Schmerber's blood for alcohol content. A report of the chemical analysis of the sample indicated that Schmerber was intoxicated. The report was received in evidence, and Schmerber was convicted of DUI. Schmerber claimed on appeal that the admission of the report compelled him to be a witness against himself, in violation of the Fifth Amendment. The Supreme Court rejected this contention, ruling that "[n]ot even a shadow of testimonial compulsion upon or enforced communication by the accused was involved either in the extraction or in the chemical analysis," 384 U.S. at 765, 86 S.Ct. 1826, and that Schmerber's "testimonial capacities were in no way implicated." *Id.*[5]

In *Pennsylvania v. Muniz, supra* note 3, a police officer directed Inocencio Muniz to perform roadside sobriety tests identical to those utilized by Officer Williams in the present case. The officer did not advise Muniz of his rights under *Miranda* prior to administering the tests. The trial judge admitted the officer's testimony regarding Muniz' performance on the tests, reasoning that "requiring a driver to perform physical sobriety tests does not violate the privilege against self-incrimination, because the evidence procured [was] of a physical nature rather than testimonial." *Com. v. Muniz*, 377 Pa.Super. 382, 547 A.2d 419, 422 (1988) (quoted in *Pennsylvania v. Muniz, supra*, 496 U.S. at 602–03, 110 S.Ct. 2638). The United States Supreme Court did not review this ruling, for Muniz had not challenged it. The Court did state, however, that

[t]his conclusion is in accord with that of many other state courts, which have reasoned that standard sobriety tests measuring reflexes, dexterity, and balance do not require the performance of testimonial acts. *See, e.g., Weatherford v. State,* 286 Ark. 376, 692 S.W.2d 605 (1985); *People v. Boudreau,* 115 A.D.2d 652, 496 N.Y.S.2d 489 (1985); *Commonwealth v. Brennan,* 386 Mass. 772, 438 N.E.2d 60 (1982); *State v. Badon,* 401 So.2d 1178 (La.1981); *State v. Arsenault,* 115 N.H. 109, 336 A.2d 244 (1975).

*Pennsylvania v. Muniz, supra,* 496 U.S. at 603, n. 16, 110 S.Ct. 2638.

More recently, in *People v. Berg,* 92 N.Y.2d 701, 685 N.Y.S.2d 906, 708 N.E.2d 979 (1999), the New York Court of Appeals reiterated that "*Miranda* warnings are not required to allow the results of field sobriety tests into evidence." *Id.* at 980 (citations omitted). The court explained:

Results of field sobriety tests such as the horizontal gaze nystagmus, walk and turn and one-leg stand are not deemed testimonial or communicative because they "do not reveal a person's subjective knowledge or thought processes but, rather, exhibit a person's degree of physical coordination for observation by police officers...." Responses to such tests incriminate an intoxicated suspect not because the tests reveal defendant's thoughts, but because defendant's body's responses [differ] from those of a sober

---

**5.** As the court pointed out,

both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture.

384 U.S. at 764, 86 S.Ct. 1826 (footnote omitted).

person.... Thus, the results of such tests may be introduced despite the failure of the police to administer *Miranda* warnings.

*Id.* at 981–82 (citations, internal quotation marks and internal brackets omitted). Similarly, in *State v. Whelan,* 728 So.2d 807, 810 (Fla.Ct.App.3d Dist.1999), the court held that

Miranda warnings are not required for roadside tests of a driver's physical coordination. That is so because a test of physical coordination generates a non-testimonial response and is not protected by the Fifth Amendment.

We agree with these authorities, and therefore conclude that Karamychev's performance on the roadside sobriety tests which Officer Williams administered to him was not testimonial in nature, that the privilege against self-incrimination was not implicated, and that, for this reason as well, no *Miranda* warnings were required.

## III.

■ Karamychev claims that Officer Williams was not qualified to testify as an expert regarding the results of the HGN test which Williams administered to Karamychev. We do not agree.

At trial, Officer Williams explained the purpose of the HGN test and the manner in which he administered it.[6] Turning to his qualifications, Officer Williams testified that about one and one half to two years before the trial, he had received a two-week training course on the subject of drinking and driving. Williams explained that the first week of the course was devoted to field sobriety tests, including HGN, and that a trainee had to pass that part of the course separately before going on to the second week.[7] He testified that it would take an hour to explain the HGN test and how to perform it, "but when we were at the class, we went over that test several times." Officer Williams stated that he performed the HGN test "numerous times that whole week." He also estimated that since the training course, he had made two to three arrests per week for drinking and driving.

■ There is no doubt that the administration of the HGN test and the in-

---

**6.** Williams' testimony included the following:

HGN is [the] horizontal [nystagmus] gaze test. Basically, it's using ... an object which I would hold in front of an individual's face and I would make several motions with that object, and they're to follow the object with their eyes without moving their head.

\* \* \*

Once I get a reply that they do understand, then I would make a motion all the way to my right and then back to my left, and then I would make the same motion again, checking for the smoothness of pursuit. Then, I would then go all the way out to the side, checking the ... maximum deviation. I would also go to the left, all the way out to the side. What I would be looking for is a movement with their pupil. Individuals who have been drinking or are under the influence of alcohol, your body will make your—it's called nystagmus—your body will have your pupil jump.

Q: What do you mean by maximum deviation?

A: Once you take the stimulant or the pen and you bring it all the way out to the side where the pupil, you see no white coloration in the corner, the pupil will be all the way to one side. Your average person, who is not under the influence of any type of alcohol, should be able to keep their pupil at that side without it bouncing back.

According to Williams, Karamychev had signs of nystagmus at forty-five degrees in each eye. There were also signs of nystagmus "prior to forty-five degrees on the left [side] and [on the] right side." He stated that "with those four clues, it usually indicates that the person is, may be under the influence of alcohol."

**7.** Of the thirty trainees in Williams' class, twenty-five passed the course, while five did not.

terpretation of the results are subjects "beyond the ken" of a lay juror, *see, e.g., Beard v. Goodyear Tire & Rubber Co.*, 587 A.2d 195, 200 (D.C.1991), and expert testimony was therefore required. *Toy v. District of Columbia*, 549 A.2d 1, 6 (D.C. 1988). In order to qualify as an expert, a witness "must have sufficient skill, knowledge or experience in [the relevant] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *Dyas v. United States*, 376 A.2d 827, 832 (D.C.), *cert. denied*, 434 U.S. 973, 98 S.Ct. 529, 54 L.Ed.2d 464 (1977) (citation omitted). Scholarship is not a prerequisite for eligibility to testify as an expert witness; the relevant knowledge may be derived from professional experience, including, in particular, experience as a police officer. *See* JOHN W. STRONG, MCCORMICK ON EVIDENCE § 13 at 60 & n. 15 (5th ed.1999); *Eason v. United States*, 687 A.2d 922, 925–26 (D.C. 1996) (police officer with training in blood spatter analysis properly qualified as an expert). Several courts have held that "testimony by a properly trained police officer with respect to the administration and results of the horizontal gaze nystagmus evidence is admissible without need for further scientific evidence." *State v. Murphy*, 451 N.W.2d 154, 158 (Iowa 1990); *see also State v. Bresson*, 51 Ohio St.3d 123, 554 N.E.2d 1330, 1334–35 (1990).

"The admission or exclusion of expert testimony ... is committed to the trial court's broad discretion." *In re Melton*, 597 A.2d 892, 901 (D.C.1991) (en banc). The trial judge is in the best position to evaluate the qualifications of an expert witness. *District of Columbia v. Arnold & Porter*, 756 A.2d 427, 434 (D.C. 2000). We have therefore accorded the trial court "wide latitude" in this area, *Coates v. United States*, 558 A.2d 1148, 1152 (D.C.1989), and the trial judge's decision "should be sustained unless it is manifestly erroneous." *Melton, supra*, 597 A.2d at 897; *Eason, supra*, 687 A.2d at 925. Applying this deferential standard to the record evidence of Williams' qualifications, we discern no manifest error or abuse of discretion on the trial judge's part. On the contrary, the evidence was properly admitted.[8]

### IV.

Finally, Karamychev contends that the evidence was insufficient to prove beyond a reasonable doubt that he was operating the Mitsubishi under the influence of alcohol. This contention is without merit. A person is guilty of DUI if he or she is *"to the slightest degree ... less able,* either mentally or physically or both, to exercise the clear judgment and steady hand necessary to handle as powerful and dangerous a mechanism as a modern automobile with safety to himself or the pub-

---

**8.** Karamychev also intimates in his brief, without meaningful argument, that the reliability of the HGN test has not been sufficiently established. Assuming, *arguendo*, that the point has been sufficiently preserved and articulated, *but cf. Keene v. United States*, 661 A.2d 1073, 1074 n. 1 (D.C.1995) (appellant's contentions, identified in his "Questions Presented," deemed abandoned where he "presented little or no argument to support those contentions in the body of his brief"); *Bardoff v. United States*, 628 A.2d 86, 90 n. 8 (D.C. 1993) (to comply with D.C.App. R. 28(a)(5), appellant's brief must contain "contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on"), we are satisfied that "the great weight of scientific literature supports [the] reliability [of the HGN test] and [that] the majority of jurisdictions around the country have declared HGN testing to be reliable." *Schultz v. State*, 106 Md.App. 145, 664 A.2d 60, 74 (1995); *see also State v. Superior Court*, 149 Ariz. 269, 718 P.2d 171, 176–82 (1986).

lic." *Poulnot v. District of Columbia*, 608 A.2d 134, 137 (D.C.1992) (emphasis in original; citation omitted). "The prosecution need not prove any specific degree of intoxication." *Id.* at 138. The evidence must be viewed in the light most favorable to the government, with due regard to the right of the trier of fact to assess credibility and to draw reasonable inferences, and we will reverse a conviction only if the evidence "is insufficient as a matter of law to persuade an impartial trier of fact of the defendant's guilt beyond a reasonable doubt." *Id.* at 137 (citations omitted).

 In this case, the proof of guilt was overwhelming. Karamychev was apprehended in the middle of the night while driving an automobile, at a substantial rate of speed, in the wrong direction on M Street in downtown Washington, D.C. He had alcohol on his breath, and his appearance in speech and gait confirmed that he was under the influence of alcohol. *See Stevenson v. District of Columbia*, 562 A.2d 622, 624 (D.C.1989); *Price v. District of Columbia*, 54 A.2d 142 (D.C.1947). According to Officer Williams, Karamychev effectively "failed" all of his roadside sobriety tests. Karamychev's refusal to take chemical tests at the police station was evidence from which the judge could properly infer consciousness of guilt. *Stevenson, supra*, 562 A.2d at 624. Moreover, "lay witnesses, including police officers, may testify to their opinion whether the driver of a vehicle appeared to be under the influence of alcohol," *Harris v. District of Columbia*, 601 A.2d 21, 24 (D.C.1991),

and Officer Williams, an experienced officer, gave such testimony in this case. Viewed, as it must be, in the light most favorable to the prosecution, the evidence was more than sufficient to support Karamychev's conviction.

*Affirmed.*[9]

---

**9.** Noting that he was not charged with speeding or going the wrong way on a one-way street, Karamychev seems to argue that the stop and arrest were pretextual. There is no record support at all for this contention. Indeed, consistent with his responsibility to protect public safety, Officer Williams could hardly have allowed Karamychev to drive east indefinitely on a westbound stretch of M Street. Moreover, if Officer Williams had an adequate objective basis to stop (and then arrest) Karamychev, his subjective motivation was legally irrelevant. *Whren v. United States*, 517 U.S. 806, 814–15, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *Scott v. United States*, 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978); *Alvarez v. United States*, 576 A.2d 713, 717 (D.C.1990).