OPINION OF THE COURT
Anne G. Feldman, J.
This is an amplification of an oral decision rendered from the bench on December 6, 2001.
Defendant is charged with manslaughter in the second degree (Penal Law § 125.15 [1]) (4 counts), vehicular manslaughter in the second degree (Penal Law § 125.12 [1], [2]) (4 counts), operating a motor vehicle while under the influence of alcohol (Vehicle and Traffic Law § 1192 [2]) (2 counts), reckless endangerment in the second degree (Penal Law § 120.20), driving with a suspended registration (Vehicle and Traffic Law § 512) and various traffic infractions. The charges arise out of a single-car collision in the vicinity of Third Avenue and 46th Street that resulted in the death of three people, Maria Herrara, her sister Delcia Pena, and her son Andy Herrara. Also at issue is whether “Baby Boy Herrara,” delivered by cesarean section after the death of Maria Herrara, was an additional fatality under the law. Defendant is alleged to have been driving his vehicle while intoxicated and above the legal speed limit when he ran a red traffic signal and collided with the family crossing the intersection.
Defendant has had the opportunity to examine the Grand Jury minutes and claims that the evidence before the Grand *42 Jury is insufficient to support any of the charges of manslaughter in the second degree while conceding the sufficiency of the evidence regarding the charges of vehicular manslaughter involving the deaths of Maria Herrara, Delcia Pena and Andy Herrara. Defendant claims, however, that none of the charges were sustained with regard to “Baby Boy Herrara.” Defendant argues that he cannot be charged with the death of a child who was never legally alive.
Defendant also seeks a number of in limine rulings prior to trial. He seeks to preclude the testimony of any lay witness who testified as to the speed at which defendant’s vehicle was traveling; to preclude testimony of defendant’s alleged drinking prior to the collision; to preclude the prosecution from introducing evidence of the name and nature of the bar where defendant was said to have been drinking; and to preclude testimony that two empty beer cans were recovered from his vehicle. Defendant also seeks to preclude the People from introducing evidence of the defendant’s refusal to submit to a coordination test. In addition, defendant moves to suppress his statements allegedly made to Captain Bryan White.
For an indictment to be sustained, the court must find that the People have met their burden of establishing a prima facie case of criminal conduct (People v Mayo, 36 NY2d 1002, 1004). The sufficiency of the Grand Jury presentation is established by determining whether the evidence, viewed in the light most favorable to the People, if unexplained and uncontradicted, would warrant conviction by a petit jury (People v Jennings, 69 NY2d 103, 114). “As long as the Grand Jury could rationally have drawn the guilty inference” the evidence is sufficient (People v Deegan, 69 NY2d 976, 979). “That other innocent inferences could possibly be drawn from the facts is irrelevant” (id.). Questions of credibility or weight of the proof are not to be considered by the reviewing, court but remain the exclusive province of the Grand Jury (People v Jennings, supra at 115).
In this case defendant concedes that the Grand Jury heard sufficient evidence to indict him for vehicular manslaughter but contends that it was not presented with evidence sufficient to indict him for manslaughter in the second degree. The court agrees with defendant’s first assessment but rejects his second.
In order to sustain an indictment for vehicular manslaughter in this case, the People must show that defendant, acting with criminal negligence, caused the death of another by operating a vehicle while intoxicated (Penal Law § 125.12 [1], [2]). A person acts with criminal negligence when he fails *43 to perceive a substantial and unjustifiable risk and that failure constitutes a gross deviation from the standard a reasonable person would observe. The identical act is elevated to reckless conduct when the person is aware of but consciously disregards the same substantial and unjustifiable risk (Penal Law § 15.05 [3]). Moreover, the conscious disregard of such risk encompasses the risk created by a defendant’s voluntary intoxication (People v Register, 60 NY2d 270).
Here, the Grand Jury heard evidence that defendant was voluntarily and excessively intoxicated, that two empty beer cans were recovered from his vehicle, that he drove his vehicle significantly above the legal speed limit, and that he disregarded or disobeyed a red traffic signal before crashing without warning into an unsuspecting family crossing the street with the traffic signal. Such conduct on defendant’s part can certainly be characterized as reckless within the meaning of Penal Law § 15.05 (3) and would suffice to establish prima facie evidence that he engaged in the blameworthy, risk-creating conduct associated with reckless manslaughter.
With regard to the counts of vehicular manslaughter and reckless manslaughter involving “Baby Boy Herrara” and his status as a person, the presentation before the Grand Jury met the legal standard for sufficiency. The Grand Jury, presented with opposing expert opinions, was entitled to reject the opinion of the Medical Examiner in favor of the opinions of the treating physicians and an expert in pediatric cardiology. They testified that a fetal heart beat was detected after the mother’s death and that “Baby Boy Herrara” was delivered by cesarean section, fully formed without a heartbeat. They further testified that this heart, although “jump started” by medication, was beating on its own for a period of time without artificial stimulation before the baby was pronounced dead.
The Grand Jury thus heard sufficient evidence from which to conclude that “Baby Boy Herrara” was a “person” capable of being a victim of a homicide. Penal Law § 125.05 (1) defines a “person” who is the victim of a homicide as “a human being who has been bom and is alive.” Public Health Law § 4130 (1) defines a “live birth” as the “complete expulsion or extraction from its mother of a product of conception * * * which after separation, breathes or shows any other evidence of life such as a beating heart, pulsation of the umbilical cord, or definite movement of the voluntary muscles.”
In People v Hall (158 AD2d 69, 76), the Appellate Division, First Department, upheld a conviction for the killing of an *44 infant born prematurely by cesarean section where the pregnant mother was the object of defendant’s assault. The Court explained the language of Penal Law § 125.05 (1) indicating that the defendant had been charged “with causing the death of a person who had been bom and lived after birth.” (At 76.) The Court further recognized that the definition of life or death is affected by the advanced medical technology of the day (id. at 75).
In this case the testimony of “Baby Boy Herrara’s” sustained heart beat and blood pressure was the defining feature in establishing his identity as a “person.” Upon separation from his deceased mother, “Baby Boy Herrara’s” heart was “jump started” by outside intervention enabling him to become an independent person for a short period of time. Absent any statutory specifications as to when or under what circumstances the heart can be revived or when it must commence beating, “Baby Boy Herrara’s” brief life as a person was clearly the product of a “live birth.”
Defendant’s motion to preclude the lay witnesses from giving opinions about the speed of defendant’s vehicle is denied. Such evidence is competent and admissible as long as a proper foundation has been laid (see, People v Olsen, 22 NY2d 230; Prince, Richardson on Evidence § 7-202 Jj] [Farrrell 11th ed]). With respect to Angel Lafarge, who gave such testimony before the Grand Jury, such a foundation was properly established before the Grand Jury.
Testimony regarding defendant’s drinking at the Wild Wild West, a topless bar, will not be precluded since it is relevant to establish both defendant’s state of mind and the extent of his intoxication. Testimony that the bar was off limits to police officers will also be permitted as relevant to defendant’s state of mind. However, the name of the bar and the nature of its entertainment shall be precluded as unnecessarily prejudicial.
Testimony that beer cans were found in the vehicle will be admitted because their discovery is relevant to the claim of defendant’s intoxication and to the level of his culpability. Defendant may establish either by cross-examination or through his own testimony that they do not reflect that he had been drinking while driving.
Defendant’s motion in limine to preclude the results of the Aleo Sensor test is granted. As conceded by the People, this test is not deemed to be reliable evidence of intoxication (People v Thomas, 121 AD2d 73, 76).
However, the motion in limine to preclude testimony of defendant’s refusal to submit to a field sobriety test for *45 coordination is denied. In People v Berg (92 NY2d 701), the Court of Appeals held that the defendant’s refusal to perform field sobriety tests such as reciting the alphabet was admissible. The Court analogized the refusal to perform field sobriety tests to the refusal to permit a chemical analysis test under Vehicle and Traffic Law § 1194 (2) (f). The Court stated that it was “constitutionally insignificant” that one was statutorily authorized while the other was not reasoning that “if evidence is constitutionally permissible, the absence of authorization in a statute does not make it impermissible.” (Id. at 706.)
Finally, a Huntley hearing concerning the statements allegedly made by defendant to Captain White is granted.