People v Spears (2004 NY Slip Op 50931(U))

[*1]

People v Spears

2004 NY Slip Op 50931(U)

Decided on August 18, 2004

Supreme Court, Monroe County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 18, 2004

Supreme Court, Monroe County
THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, 
against
MARCUS L. SPEARS, Defendant.
2004-0175

APPEARANCES:
Michael C. Green
Monroe County District Attorney
Raymond G. Benitez, A.D.A.
47 South Fitzhugh Street, Suite 832
Rochester, New York 14614
Edward J. Nowak
Monroe County Public Defender
John Bradley, A.P.D.
10 North Fitzhugh Street
Rochester, New York 14614

DECISION AND ORDER
JOSEPH D. VALENTINO, J.
Defendant stands accused under Indictment # 2004-0175 of Criminal Possession of a Weapon in the Third Degree and Criminal Possession of Stolen Property in the Fourth Degree. The Court considered the matters raised in defendant's omnibus motion and granted defendant a combined Mapp/Huntley (see, Mapp v Ohio, 367 US 643; People v Huntley, 15 NY2d 72) hearing to determine whether to suppress the gun, tangible evidence seized by the police, and defendant's statement to law enforcement. The hearing commenced August 5, 2004 and concluded August 17, 2004.
FINDINGS OF FACT
At the hearing, the prosecution presented the testimony of Rochester Police Department Officers Beth A. Klawitter and Herbert McClellan and Investigator Frank Camp. Defendant also testified.
[*2]
Officer McClellan, an employee of Rochester Police Department for four and one-half years, testified that he works in the Tactical Unit. On September 30, 2003 at approximately 11:30 a.m., as he was responding in his police car to a disturbance call, he observed defendant standing with another person at the corner of Jefferson and Adams Streets in the City of Rochester. McClellan described the area as a "high crime area" and that the defendant appeared "surprised"and stood still when McClellan passed defendant.
Officer Klawitter, who has worked for the Rochester Police Department for seven years, also responded to the disturbance call at the same time. Klawitter testified that as the police were going to the disturbance call, she observed two men "freeze" on the corner of Jefferson and Adams Street, and she described their behavior as "suspicious activity."
Approximately ten minutes later, when police returned to the area of the corner, defendant and the other person were still standing on the corner. McClellan observed that both people were wearing dark clothing and defendant again looked surprised. Four marked police cars approached the corner. Defendant and the other person looked at the police cars and made eye contact with the police. The two men began walking away in an easterly direction around the corner and down Adams Street when the police cars slowed down. Defendant came to a stop and turned his back to McClellan.
As one of the police cars slowed down to stop next to defendant, defendant began to run and jumped a stockade fence that was missing some slats. The fence was approximately 5 feet 11 inches to 6 feet tall. McClellan ran up to the fence to see where defendant went. McClellan observed that defendant appeared to be "bobbling" something in his waistband area. He stated that the defendant bent over, dropped a small black object on the ground, and then continued running. McClellan thought that the object could have been a handgun, and when he came upon the object, he saw that it was a handgun. He yelled to the other officers, "He got rid of the gun." Another officer ordered defendant to the ground, and McClellan took defendant into custody.
Klawitter testified that the men's behavior in "freezing" and twice appearing surprised to see police, combined with walking away as police approached, was the reason for the initial inquiry of the men. She got out of her patrol car and approached the person other than the defendant to ask what he was doing. At the same time, she saw other officers chasing the defendant.
Camp, who has worked for Rochester Police Department for 18 years, testified that on September 30, 2003, he interviewed defendant for approximately 20 minutes beginning at approximately 1:25 p.m. at the Public Safety Building. Only Camp and defendant were in the interview room. Camp advised defendant of his Miranda rights from a rights card, and defendant waived those rights (see, People's Exhibit No. 2). Defendant told Camp that he had last attended tenth grade at East High School and was able to read and write English. Defendant was not under the influence of any alcohol or drugs. Camp asked defendant, "What happened?" Defendant gave his explanation, and Camp reduced defendant's statement to writing and read it back to defendant. Defendant made corrections on both pages. At approximately 1:30 p.m., Klawitter joined Camp and defendant in the interview room. Camp asked Klawitter to witness defendant's signature on a written statement at 1:41 p.m. The statement was already filled out when she observed defendant sign the statement (see, People's Exhibit No. 1). She testified that no threats or promises were made to defendant. Camp also testified that no threats or coercion was used to obtain defendant's statement.
[*3]
Defendant testified that he is 21 years old and that on September 30, 2003, at 11:30 a.m., he was on his way home to Adams Street. He said that he did not see any police cars until four cars pulled up on him. He said that the four police cars came from Jefferson Street to Adams Street. A police car pulled onto the grass next to defendant and an officer got out of the car and said "Hey." Defendant went to the side of a house and the police ran after him. He stated that the police looked like they wanted to do more than talk to him. Defendant ran into a back yard and jumped a fence with a height between 5 foot 11 inches to 6 feet. Defendant stated that the gun fell out of his sweat pants when he landed on the other side of the fence. The gun was secured in defendant's sweat pants by a string in the pants. Because defendant was carrying a handgun, he ran when police approached him. Defendant believed that the police were going to arrest him.
CONCLUSIONS OF LAW
Credibility
Upon a thorough review of the evidence, the Court finds the testimony presented by the prosecution to be credible. The Court examined the testimony of defendant, and in conjunction with the exhibits and credible police testimony, the Court finds defendant's testimony not credible.
Legality of Police Conduct
Regarding defendant's request that the gun and his statement be suppressed as a result of improper or illegal police conduct in approaching, attempting to stop, and in pursuing and arresting defendant, the prosecution has the burden of going forward to show the legality of the police conduct in the first instance, but the ultimate burden is upon defendant to prove that the evidence should be suppressed by a preponderance of the evidence.
"Where police acting in their criminal law enforcement capacity initiate an encounter with private citizens, the propriety of the encounter must be assessed under the four-tiered analytical framework articulated in De Bour and reaffirmed in Hollman" (People v McIntosh, 96 NY2d 521, 525). When evaluating the propriety of police conduct involving the search or seizure of an individual, the Court must determine whether the initial encounter was justified and whether any consequent intrusion was reasonably responsive to the circumstances presented (see, People v Hollman, 79 NY2d 181; People v DeBour, 40 NY2d 210, 222). Importantly, "a defendant's flight in response to an approach by the police, combined with other specific circumstances indicating that the suspect may be engaged in criminal activity, may give rise to reasonable suspicion, the necessary predicate for police pursuit" (People v Sierra, 83 NY2d 928, 929). "Typically, no single factor will justify the police conduct under scrutiny; rather, it is the peculiar combination of factors known to the police at the time, and as circumstances evolve, that will determine the appropriate level of intrusive conduct" (People v Giles, 223 AD2d 39, 43, lv denied 89 NY2d 864; see, People v Martinez, 80 NY2d 444; People v Bratcher, 291 AD2d 878, lv denied 98 NY2d 673).
The totality of the circumstances confronting the officers  beginning with their familiarity with the neighborhood as a "high crime area," combined with defendant's surprise, and suspicious "freezing" and standing still when police passed him on their way to a disturbance call, defendant's presence in the same place on the corner ten minutes later when officers returned by the corner, defendant again appearing surprised, defendant making eye contact with the approaching police, defendant seeing their marked patrol vehicles, and defendant beginning to walk around the corner down Adams Street upon seeing the police  all together furnished an objective, credible reason to approach defendant (see, People v Sierra, supra; People v DeBour, supra) and exercise the common [*4]law right of inquiry (see, People v Jackson, 272 AD2d 991, lv denied 95 NY2d 866).
Defendant's subsequent flight from the approaching, decelerating police car, police observation of something bobbling in defendant's waistband area, and defendant jumping a nearly six-foot stockade fence, gave rise to reasonable suspicion that he was committing or was about to commit a crime and provided reasonable suspicion to pursue defendant (see, People v Sierra, supra; People v Jackson, 249 AD2d 327, lv denied 91 NY2d 1008). During defendant's flight from police, Officer McClellan saw defendant drop a small black object, which turned out to be a gun, and this provided the police with the requisite probable cause to arrest defendant (see, id.)
Viewed singly, and "standing alone," these circumstances may not have necessarily been persuasive; however, the "confluence of factors" in the aggregate, establish that the "puzzle" fit, thereby providing initial reasonable suspicion and subsequent probable cause to arrest defendant (see, People v Bigelow, 66 NY2d 417; People v. Montes, 283 AD2d 151, lv denied 96 NY2d 904). Accordingly, the police were justified in approaching, pursuing, stopping, and arresting defendant. Upon the foregoing, and the totality of the evidence, the prosecution has sustained its burden by establishing the legality of the police conduct from its inception until defendant's legal arrest, based upon requisite probable cause. Consequently, defendant's motion to suppress any evidence seized or obtained as a result of his arrest, including the gun and his statements, is hereby denied in its entirety.
Huntley Issue
Regarding defendant's oral and written statements, in New York, a confession or admission is admissible at trial only if its voluntariness is established by the People beyond a reasonable doubt (see, People v Valerius, 31 NY2d 51).
The issue presented is whether, under the totality of the circumstances, defendant's statements were obtained in violation of his constitutional right against self-incrimination and/or his constitutional right to counsel. The prosecution has the burden to negate the issue and to establish voluntariness beyond a reasonable doubt. Miranda warnings are required whenever a person is subjected to custodial interrogation, that is, when a person's freedom of movement is restrained in a manner associated with a formal arrest and the questioning is intended to elicit incriminating evidence (see, Miranda v Arizona, 384 US 436; People v Berg, 92 NY2d 701).
Upon the totality of the evidence and circumstances presented (see, People v Anderson, 42 NY2d 35, 38), the Court concludes that the prosecution has sustained its burden of proof by establishing that defendant knowingly and intelligently waived his Miranda rights prior to speaking to the police (see, People v Sirno, 76 NY2d 967; People v Williams, 62 NY2d 285; People v Wright, 171 AD2d 905, lv denied 77 NY2d 1003), and that his oral and written statements to them were voluntary (see, People v Reyes, 190 AD2d 693, lv denied 81 NY2d 975; People v Bilbrew, 177 AD2d 582, lv denied 79 NY2d 918 ). Furthermore, defendant's statements were not the product of coercion, pressure, or any other improper form of inducement (see, People v Guthrie, 222 AD2d 1084, lv denied 87 NY2d 973; People v Williams, 222 AD2d 468, lv denied 88 NY2d 887, cf. People v Orso, 270 AD2d 947, lv denied 95 NY2d 856). Therefore, it is hereby determined that defendant's statements were obtained with due regard to his constitutional rights, and as such, all statements made by him and referenced in the People's CPL 710.30 notice are duly admissible at trial. [*5]Accordingly, defendant's motion to suppress his statements is herewith denied in its entirety.
The above constitutes the Decision and Order of this Court.
Dated:Rochester, New York
August 18, 2004
____________________________________
 Hon. Joseph D. Valentino
 Justice Supreme Court