**Darrell HUNT, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 95–CF–836.

District of Columbia Court of Appeals.

Argued Feb. 3, 1999.
Decided April 15, 1999 *.

Christopher S. Merriam, Washington, DC, for appellant.

Anthony S. Barkow, Assistant United States Attorney, with whom Wilma A.

---

* The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. It is now being published, with minor revisions, by direction of the court.

Lewis, United States Attorney, and John R. Fisher, Erik P. Christian and Ann L. Rosenfield, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, REID, Associate Judge, and KERN, Senior Judge.

PER CURIAM:

Appellant Darrell Hunt appeals from the judgment of the trial court finding him guilty of two counts of the lesser included offense of second degree murder while armed of Rolland Hayden and Clarence Gilchrist;[1] possession of a firearm during the commission of a crime of violence, in violation of § 22–3204(b); and carrying a pistol without a license, in violation of § 22–3204(a).[2] He contends that the trial court erred in failing to: (1) consider the doctrine of concurrent intent with respect to his motion for judgment of acquittal of the murder of Clarence Gilchrist, and (2) instruct the jury on the theory of concurrent intent. Seeing no merit to these arguments, we affirm.

## FACTUAL SUMMARY

The government's evidence introduced at Hunt's trial showed that on March 1, 1992, Hunt fired multiple shots, several of which killed Rolland Hayden, and one of which caused the death of Clarence Gilchrist. After playing basketball in the Potomac Gardens area of the District of Columbia with some of his friends, Hunt got into a Nissan Sentra car with other passengers. As the car was being driven in the 1400 block of K Street, S.E., Hunt's attention was called to a white Subaru automobile. Seated in that automobile was Hunt's girlfriend, "Penny," and Rolland Hayden. They were fighting. Eventually, the Nissan Sentra car stopped and positioned itself in front of the white Subaru.

Hunt and others got out of the Nissan Sentra. Hunt proceeded to the passenger side of the white Subaru and asked Penny why she was with Hayden. He also asked Hayden why he was fighting with Penny. Both told Hunt that Penny wanted to go to McDonald's to get food for her children. Hayden indicated that Penny had thrown soda on him.

While Hunt was arguing with Penny and Hayden, Clarence Gilchrist and Jawanza Williams drove by in a white Corvette. Gilchrist stopped the car when Williams saw a friend of his, Kenny and Kenny's infant son, parked at the corner of 15th and K Streets, S.E., in a burgundy van behind the white Subaru in which Penny and Hayden were seated. Gilchrist parked the white Corvette in an adjacent alley, got out, and walked towards the burgundy van carrying Kenny and his son. Williams remained in the Corvette. Williams heard Gilchrist tell Hunt and Hayden: "You-all need to just stop, stop this beefing . . . ." Penny was removed from the white Subaru with force and taken to the Nissan Sentra in which Hunt had been riding.

Hunt went over to the Nissan Sentra, looked inside, returned to the white Subaru, took an automatic pistol from his waistband and started shooting into the car where Hayden was still seated. Gilchrist, who at the time of the shooting was on the other side of the white Subaru, fell to the ground. Witnesses to the shooting heard ten to twenty or thirty "quick fire" shots.

---

1. Hunt was charged with two counts of first degree premeditated murder while armed of Rolland Hayden and Clarence Gilchrist, in violation of D.C.Code §§ 22–2401, –3202 (1992 Supp.). The jury found him not guilty of these charges.

2. Prior to jury deliberation, the trial court dismissed the charge of carrying a dangerous weapon, in violation of § 22–3204(a). He was sentenced to consecutive terms of fifteen years to life on each second degree murder offense; fifteen years to life for possession of a firearm during a crime of violence, to run consecutively to the other sentences; and one year for carrying a pistol without a license, to run concurrently with his other sentences.

The medical examiner discovered ten gunshot wounds on Hayden's body, and one on Gilchrist's body.

The government called several witnesses, including two residents of the 1400 block of K Street, S.E., who witnessed the events; a friend of Hunt's for seventeen or twenty years, who also was an eyewitness; Jawanza Williams who was in the car with Gilchrist; and the Deputy Chief Medical Examiner for the District of Columbia. The defense called two witnesses, and sought to discredit the testimony of the government's witnesses.

Before the defense rested its case, the trial court discussed its proposed jury instructions with counsel. In response to the court's question as to whether there were any pre-trial submissions of proposed jury instructions, the government mentioned a proposed instruction regarding transferred intent. The defense had submitted no proposed instructions prior to trial.

During the discussion of lesser included offenses, the trial court expressed its intent to instruct the jury on second degree murder and to give Instruction No. 4.17 (Homicide—First Degree Premeditated Murder and Second Degree Murder (No Justification Or Mitigation Generated)) from CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA (4th ed.1993). When defense counsel asked for an instruction on involuntary manslaughter, the trial court decided to give Instruction No. 4.18 (Homicide—First Degree Premeditated Murder, Second Degree Murder, and Voluntary Manslaughter ( . . . Heat of Passion Caused By Adequate Provocation)), instead of No. 4.17. Defense counsel expressed no objection to the court's decision.

The following day, defense counsel renewed his motion for judgment of acquittal, "specifically with regard to the first degree murder charge . . . of Mr. Gilchrist against . . . Mr. Hunt." In discussing his motion and his request for a concurrent intent jury instruction, defense counsel stated in part:

> Concurrent intent says that the jury may find that if [Hunt] had premeditation and deliberation against Hayden, they may find that he had it against Gilchrest [sic], but they may not. They look at Gilchr[i]st's homicide under basically its own merits, and in doing so they look at the normal instructions for first degree murder, second degree murder, manslaughter, and they are also told that if a person creates a zone of harm, then you may infer that they had some intent or the same intent with regard to the unintended victim, but it is not a must situation . . . .
>
> But the reason I bring it up in the MJOA context . . . is that if the Court agrees that concurrent intent is the proper doctrine as opposed to transferred intent, then I think that the Court has to grant a judgment of acquittal on first degree murder versus Mr. Gilchr[i]st because even looking at the evidence in the light most favorable to the Government, there is no evidence to support that Mr. Hunt had a premeditat[ed] and deliberated plan or intent to kill Clarence Gilchr[i]st, and, in fact, the Government's evidence from Jawanza Williams was that Mr. Hunt was surprised and kind of dumbfounded when he realized that Mr. Gilchr[i]st had been shot.

Defense counsel went on to argue that a transferred intent instruction would mandate that Hunt be found to have premeditated and deliberated the murder of Gilchrist, and that:

> [I]n a situation like this where the intended victim is killed and the unintended victim is killed, then the Court should not rely on the transferred intent doctrine . . ., but the concurrent intent doctrine from Maryland.

The trial court indicated that the Court of Appeals has not adopted the concurrent intent theory and declined to instruct the jury on that theory. In response to the

court's question as to whether defense counsel had "any other objection to [the court's proposed transferred intent] instruction," defense counsel said: "No, Your Honor."

After the defense rested its case, the trial court revisited the issue of a concurrent intent instruction, and this court's decision in *Ruffin v. United States,* 642 A.2d 1288 (D.C.1994), and the Maryland Court of Appeals decision in *Ford v. State,* 330 Md. 682, 625 A.2d 984 (1993). The court again concluded that because the District of Columbia Court of Appeals "has not bought into *Ford,*" it would not give the concurrent intent theory.

In charging the jury, the trial court set forth the elements of first degree premeditated murder while armed, and then the elements of second degree murder while armed. Following these charges, the court instructed the jury as to mitigating circumstances, heat of passion caused by adequate provocation. Next, the court turned to the elements of voluntary manslaughter while armed, followed by a more detailed charge as to "intent" and "state of mind." Only then did the court give the transferred intent instruction, saying:

> With regard to the alleged murder of Mr. Gilchr[i]st, I must also instruct you with regard to a legal doctrine known as transferred intent. Under the principle of transferred intent, a person who intends to kill one person and kills another person instead is deemed to have committed whatever degree of homicide would have been committed if he had killed his intended victim, whether it be first degree murder, second degree murder or voluntary manslaughter. In each instance the intent to kill the intended victim is transferred by operation of law to the unintended victim.

Defense counsel raised no objections at the conclusion of the trial court's instructions to the jury.

## ANALYSIS

■ " 'In reviewing [the denial of a motion for judgment of acquittal based on] the sufficiency of evidence presented at trial we must consider the evidence in the light most favorable to the government to determine if it was sufficient to permit reasonable jurors to find guilt beyond a reasonable doubt.' " *Zanders v. United States,* 678 A.2d 556, 563 (D.C.1996) (quoting *Dyson v. United States,* 450 A.2d 432, 436 (D.C.1982) (citation omitted)). "Moreover, '[i]t is only where the government has produced no evidence from which a reasonable mind might fairly infer guilt beyond a reasonable doubt that this court can reverse a conviction.' " *Id.* (quoting *Gayden v. United States,* 584 A.2d 578, 580 (D.C.1990) (quoting *Frendak v. United States,* 408 A.2d 364, 371 (D.C.1979))).

■ The record reveals that Hunt sought a judgment of acquittal only with respect to first degree premeditated murder. The jury found him not guilty of that charge. Moreover, to the extent that his motion could be read broadly as encompassing any of the lesser included offenses, given the testimony of the eyewitnesses and the deputy chief medical examiner, there was more than sufficient evidence to sustain Hunt's conviction beyond a reasonable doubt for second degree murder of Gilchrist while armed.

■ "In reviewing jury instructions, we must look at the instructions 'as a whole in assessing whether they constituted prejudicial error.' " *Murchison v. United States,* 486 A.2d 77, 82 (D.C.1984) (quoting *United States v. Lemire,* 232 U.S.App. D.C. 100, 113, 720 F.2d 1327, 1340 (1983), *cert. denied,* 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984)). Our review of the record satisfies us that the trial court committed no error in instructing the jury on transferred intent, and that even assuming error, the error was harmless.

The record before us shows that defense counsel's overriding concern was the possi-

bility of a conviction on the first degree premeditated murder of Gilchrist while armed. That did not happen. Furthermore, the record reveals that the trial court's instructions on the crimes and the lesser included offenses was fair, balanced and contained no discernible error. Not only did the court review each of the elements of first degree premeditated murder while armed and second degree murder while armed, but also discussed mitigating circumstances before charging the jury as to voluntary manslaughter and as to the details of "intent" and "state of mind." Only after these charges had been given did the court instruct the jury on transferred intent. That instruction was short and did not unduly emphasize the transfer of the intent to kill from the intended to the unintended victim.

■ This court has not limited the application of the doctrine of transferred intent where the intended victim is murdered. *See Brooks v. United States,* 655 A.2d 844, 849 (D.C.1995). Furthermore, despite the dicta set forth in *Ford, supra,* concerning concurrent intent,[3] the Maryland Court of Appeals has rejected efforts to limit the application of the transferred intent doctrine. *See Harvey v. State,* 111 Md.App. 401, 681 A.2d 628, 637, *cert. denied,* 344 Md. 330, 686 A.2d 635 (1996) (concluding that "the doctrine of transferred intent operates with full force whenever the unintended victim is hit and killed" regardless of the fate of the intended victim). *See also United States v. Sampol,* 204 U.S.App. D.C. 349, 402–03, 636 F.2d 621, 674–75 (1980). Furthermore, even assuming that the *Ford* decision should have been applied and a concurrent intent instruction given, we are satisfied that the outcome in this case would not have been different. *Ford* recognized that where "[t]he defendant has intentionally created a 'kill zone' to ensure the death of his primary victim, ... the trier of fact

may reasonably infer from the method employed an intent to kill others concurrent with the intent to kill the primary victim." 625 A.2d at 1001. Here, by unloading multiple "quick fire" shots to hit Hayden, Hunt created a "kill zone" that ensnared Gilchrist, and a jury could reasonably infer an intent to kill Gilchrist concurrent with the intent to kill Hayden. Thus, even assuming that the trial court erred in failing to give a concurrent intent instruction, the error was harmless.

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

*So ordered.*

---

**3.** The *Ford* court stated in passing: "Transferred intent does *not* make two crimes out of one. Where the crime intended has actually been committed against the intended victim, transferred intent is unnecessary and should not be applied to acts against unintended victims." 625 A.2d at 998 (emphasis in original).