Larry R. TAYLOR, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 11–CT–244.

District of Columbia Court of Appeals.

Argued June 6, 2012.

Decided Aug. 16, 2012.

Dennis M. Hart, Washington, appointed by the court, for appellant.

Janice Y. Sheppard, Assistant Attorney General, with whom Irvin B. Nathan, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Rosalyn Calbert Groce, Deputy Solicitor General, were on the brief, for appellee.

Before THOMPSON and BECKWITH, Associate Judges, and REID, Senior Judge.

THOMPSON, Associate Judge:

Having been instructed that appellant Larry Taylor could be convicted of Operating a Vehicle While Intoxicated ("OWI")[1] if the District of Columbia (the "District") proved beyond a reasonable doubt that he was impaired by alcohol "in any way or at some level" while operating a motor vehicle, a Superior Court jury found him guilty of that charged offense. The jury was unable, however, to reach a verdict on the additional charge of Driving Under the Influence ("DUI").[2] In this appeal, appellant argues that OWI and DUI are "alternative offenses for the same conduct," and that the trial judge therefore committed reversible error (1) in instructing the jury that OWI "is a lesser standard," and (2) in failing to instruct them that, to convict appellant of OWI, they must find that he was impaired to "an appreciable degree,"

---

1. D.C.Code § 50–2201.05(b)(2) (2001).

2. D.C.Code § 50–2201.05(b)(1)(A)(i)(II) (2001).

the same instruction the court gave as to DUI. Although we agree that the trial court erred in instructing the jury that the threshold of impairment required for an OWI conviction is less than the threshold of impairment required for a DUI conviction, we conclude in light of the jury's particular questions, the evidence presented, and the entire charge to the jury, that the instructional errors were harmless beyond a reasonable doubt as to the OWI conviction. We therefore affirm the judgment of conviction.

## I. Background

At appellant's trial, Metropolitan Police Detective Joseph Diliberto testified that, at around 9:00 P.M. on February 25, 2009, he was patrolling in his police cruiser when he heard and then responded to a dispatcher's lookout for a dark-colored van that was driving recklessly. Around the 800 block of Mississippi Avenue, S.E., a residential area, Detective Diliberto spotted a van matching the description, and began following it. The van was traveling within the speed limit and, although not weaving or drifting, was driving "on the wrong side of the roadway" for approximately five to six blocks. Detective Diliberto turned on his lights and siren, and the van pulled over.

Other officers arrived on the scene, and, along with Detective Diliberto, they approached the van and driver. Detective Diliberto testified that appellant was sitting in the driver's seat and that he was the sole occupant in the van.[3] As the detective approached the van, he smelled "a strong odor of beer." He testified that when he observed the appellant, "something obviously wasn't right." Appellant "wasn't responding to a lot of the questions immediately, or at all," and the detective had difficulty "mak[ing] sense of what he did say."[4] Appellant also "had trouble focusing on [the detective]," and "[h]is eyes were all watery." The officers found an opened beer can and beer bottle, both partially empty, in the center console of the van. When Detective Diliberto asked appellant to step out of the van, he noticed "right away that [appellant] was unsure of how he was standing and that his balance was off, ... to the point where we had to grab onto him because I was afraid he was going to fall down and hurt himself." The detective testified that it was "obvious that there was some impairment there." Some of the other officers assisted in holding appellant upright. While one of the officers was holding him upright, appellant began urinating in his pants. Detective Diliberto also noticed that appellant's "pupils would involuntarily jerk, which is a resting nystagmus."[5]

Detective Diliberto testified that he did not administer the standard field sobriety test because he was afraid that, if left unassisted, appellant might fall down and injure himself, and that he did not perform the horizontal gaze nystagmus test because appellant was having difficulty focusing. Concluding that appellant "could not operate a motor vehicle," Detective Diliberto placed him under arrest. On cross-examination, the detective acknowledged that during the "stopping sequence alone,"

3. On cross-examination, however, Detective Diliberto acknowledged that he wrote in the report he prepared that evening that there also was a male passenger in the van.

4. Detective Diliberto testified that "there was some kind of incoherent communication going on" and that appellant "really didn't understand what was going on."

5. On cross-examination, the detective acknowledged that training materials state that resting nystagmus may be a sign of a medical impairment, and that he did not ask appellant whether he had a medical condition of a type that might "mimic the effects of alcohol intoxication."

i.e., during the time when appellant pulled over and stopped his car in response to the police lights and siren, the detective saw nothing to indicate that appellant was impaired.

In instructing the jury on the elements of DUI at the close of the evidence, the trial court told them that the District was required to prove beyond a reasonable doubt that appellant operated a motor vehicle under the influence of alcohol, and that "[o]ne is under the influence of alcohol when one's ability to operate a motor vehicle is impaired to the slightest degree." [6] Regarding OWI, the court instructed the jury that it is "a separate offense from driving under the influence. Under this offense, you must consider whether the District of Columbia has proved beyond a reasonable doubt that the defendant's ability to operate a motor vehicle was impaired in any way.... One is under the influence when one's ability ... to operate a motor vehicle is impaired in any way."

The following day, the trial judge explained to counsel that he had thought more about the instructions already given and believed he would be "hard pressed" to explain to the jury, if they asked, the difference between impairment "to the slightest degree" (the term the court had used in instructing the jury on DUI) and "any" degree of impairment (the term the court had used in instructing the jury on OWI). The trial judge also told counsel that he had reread the relevant case law, in particular *Poulnot v. District of Columbia*, 608 A.2d 134 (D.C.1992), and that he would re-instruct the jury with respect to DUI, "giv[ing] the same exact instruction but substitut[ing] 'appreciable' for 'slight-est.'" The court then re-instructed the jury that for purposes of the DUI statute, "[o]ne is under the influence of alcohol when one's ability to operate a motor vehicle [is] impaired to an appreciable degree. Thus, the term 'under the influence' means that the person charged must have drunk alcohol so that the effect of the alcohol disturbed or interfered with his normal mental or physical faculties to an appreciable degree."

After the jurors began deliberating, they sent a note to the trial judge asking the court to "explain the term 'to an appreciable degree' which is used in the last sentence of the second paragraph of the instruction." After a discussion with counsel, the court sent a note to the jury instructing them that " '[t]o an appreciable degree' means enough to be perceived or estimated; noticeable" (a definition that the court explained to counsel it took from Webster's Dictionary).[7]. Less than an hour later, the jury sent a second note, asking, "Will you please further explain the differences between driving while under the influence of alcohol and operating a motor vehicle while impaired?" Before the court had had an opportunity to respond to the second note, it received a third note from the jury asking, "If we find the Defendant operated a motor vehicle in the District of Columbia while he was impaired by alcohol, must we find that he was guilty of driving under the influence of alcohol?" With the agreement of counsel, the court sent a "No" response to the third note. Regarding the second note, the court said that it would respond by adding the word "considerable" to the definition of "appreciable," observing that

---

6. The court added that "the term 'under the influence' means that the person charged must have dr[u]nk alcohol so as to affect—so that the effect of the alcohol disturbed or interfered with his normal mental or physical faculties to the slightest degree."

7. Defense counsel told the court that he preferred the alternative definition the court had suggested, which the court had found in Dictionary.com: "sufficient to be readily perceived or estimated[;] considerable."

it is "perhaps even a stronger word" that "implies something greater than" the phrase "enough to be perceived" connotes. The court decided to give that instruction over the District's objection that use of the word "considerable" would "rais[e] the burden on DUI" and "add a burden upon the Government that was not there." The court sent the jury a written instruction that told them that "DUI requires that one is under the influence of alcohol when one's ability to operate a motor vehicle was impaired to an appreciable degree, that is, enough to be perceived or estimated, noticeable or considerable." By contrast, the court's note instructed, "to show that somebody is impaired [for purposes of the OWI statute], it doesn't have to be an appreciable degree, just to be impaired in any way, or at some level."

Shortly after receiving that instruction from the court, the jury sent a fourth note in which it asked, "With respect to the definition you have given us of 'appreciable degree' as used in the jury instructions concerning driving under the influence, does 'appreciable degree' mean merely noticeable or must it be something more than that?" The court, in its final instruction to the jury, answered their inquiry as follows:

[T]here is a difference between DUI, driving under the influence, and OWI, and the difference is that DUI requires that one is under the influence of alcohol when one's ability to operate a motor vehicle was impaired to what we call an appreciable degree or, to state it another way, that is enough to be perceived or estimated, noticeable or considerable. And that's the difference from OWI, which is a lesser standard. To show that somebody is impaired for OWI, it doesn't have to be an appreciable degree or a considerable degree or a noticeable degree. And these words are pretty much interchangeable. And that's my point. I have a stated [sic] "apprecia-

ble" several different ways. In my view, they're basically interchangeable. . . .

So for OWI, it doesn't have to show that somebody is impaired—it doesn't have to be an appreciable degree or a considerable degree or a noticeable degree, just to be impaired in any way or at some level.

So I realize I perhaps haven't precisely answered your question, but I have tried in both phraseologies to use alternative words to communicate that there is a difference in degree.

The court also told the jury that it was "going to rely on your common sense and how you ordinarily use" the terms contained in the instruction.

After receiving the supplemental instruction, the jury resumed its deliberations. The same day, it returned its guilty verdict on the OWI charge, but told the court that it was unable to reach a decision on the DUI charge. The court declared a mistrial on the DUI charge, and proceeded to sentencing on the OWI conviction.

## II. Analysis

■■■ As already described, appellant contends that he is entitled to a reversal of his OWI conviction on the ground that the trial court erred in instructing the jury that OWI "is a lesser standard" and in failing to instruct them that, to convict appellant of OWI, they must find that he was impaired to "an appreciable degree," the same instruction the court gave as to DUI. "The question whether [a] challenged instruction was proper . . . is one of law." *Wilson–Bey v. United States,* 903 A.2d 818, 827 (D.C.2006). "Accordingly, our review is de novo, and we accord no deference to the ruling of the trial court." *Id.* "[T]he central question for this Court is whether [the challenged instruction] is an adequate statement of the law[.]" *Wheeler*

*v. United States,* 930 A.2d 232, 238 (D.C. 2007).

### A. Whether the Alcohol–Impairment Threshold is the Same for DUI and OWI

██ The several colloquies that occurred between the trial court and counsel as they struggled to formulate answers to the jury's questions about the difference between OWI and DUI make it abundantly clear that, as the trial judge put it, the relationship between the two offenses "needs to get sorted out somehow[.]" Since the issues before us turn on the proper interpretation of the OWI and DUI statutes, our effort at "sort[ing] out" must begin with the plain language of the relevant statutory provisions. *See Pinckney v. United States,* 906 A.2d 301, 305 (D.C. 2006).

D.C.Code § 50–2201.05(b)(1)(A)(i)(II), the statutory provision that sets out the elements of DUI, prohibits operating or being in physical control of a vehicle while "under the influence of intoxicating liquor or any drug or any combination thereof." D.C.Code § 50–2201.05(b)(2), the provision that sets out the elements of OWI, prohibits operating or being in physical control of a vehicle "while the person's ability to operate a vehicle is impaired by the consumption of intoxicating liquor[.]" We have recognized that both provisions prohibit driving while "impaired" by alcohol.[8] However, nothing in the proscriptive language of either provision indicates whether the degree of impairment required for conviction is greater or lesser under one provision than under the other, or instead is the same.[9]

A quick comparative glance at the penalty provisions for first-time DUI and OWI offenses—a 90–day term of imprisonment for a first DUI offense, *see* D.C.Code § 50–2201.05(b)(1)(A)(ii), compared to a 30–day term of imprisonment for a first OWI offense, *see* D.C.Code § 50–2201.05(b)(2)—could lead one to surmise that the degree of impairment necessary

---

**8.** *See, e.g., Anand v. District of Columbia,* 801 A.2d 951, 957, 957 n. 8 (D.C.2002), in which we explained that we have defined "DUI essentially as, driving while 'appreciably impaired' by alcohol" and that, for purposes of determining whether the accused is guilty of OWI, "[t]he question is whether the accused 'was so affected by the consumption of alcohol that it impaired his/her ability to operate a motor vehicle in the same way a reasonably careful and prudent driver, not so impaired, would operate a vehicle in similar circumstances'" (citation omitted). The formulations we articulated in *Anand* are not inconsistent, but neither in *Anand* nor in any other case did we reach the issue "whether there is in fact no inherent distinction between the terms driving 'while impaired' in one statutory provision and driving while 'under the influence' in the other." 801 A.2d at 955–56.

**9.** Our opinions heretofore have established that DUI and OWI are "separate and distinct" offenses, *Scott v. District of Columbia,* 539 A.2d 1085, 1086 (D.C.1988), and that they "are so closely related that they should be

considered alternates, precluding punishment for both." *Santos v. District of Columbia,* 940 A.2d 113, 114 (D.C.2007) (accepting the District's concession as to that point); *see also Tabaka v. District of Columbia,* 976 A.2d 173, 174 (D.C.2009) (accepting the government's concession that "if appellant's conviction for DUI is upheld, his conviction for OWI must be vacated on remand as duplicative."). We have also held that OWI is not a lesser included offense of DUI, *see Scott,* 539 A.2d at 1086, i.e., that it is not "impossible to commit [DUI] without first having committed [OWI]." *Alfaro v. United States,* 859 A.2d 149, 156 (D.C.2004) (citation and internal quotation marks omitted). *Scott* did not, however, decide whether the degree of impairment required for conviction under the two statutes is the same; its holding that OWI is not a lesser included offense of DUI could mean, for example, no more than that a person can be found guilty of DUI for having driven under the influence of a drug, without having consumed intoxicating liquor, which is required for an OWI conviction.

for a DUI conviction must be greater than that necessary for an OWI conviction. However, both appellant and the District urge us to reject that conclusion, arguing that (with regard to alcohol-related impairment) the Council of the District of Columbia ("the Council") intended OWI, the later-created of the two offenses, to be an alternative charge for the same conduct that could be charged and prosecuted as DUI. We therefore turn to consider the legislative history of the OWI statute, "to ensure that our interpretation is consistent with legislative intent." *Richardson v. United States*, 927 A.2d 1137, 1139 (D.C. 2007).

The legislative history reveals that, in establishing the separate offense of OWI, the Council intended to afford the Corporation Counsel (now the Attorney General of the District of Columbia) "added flexibility." Council of the District of Columbia, Committee on Transportation and Environmental Affairs, Report on Bill 4–389, the "Anti–Drunk Driving Act of 1982" ("Committee Report") at 7. The Committee Report explains that "[i]nstead of plea bargaining [DUI] down to reckless driving, the Corporation Counsel will be able to use [OWI] as the *lesser alcohol traffic offense*." *Id.* (italics added). The Council created this option, so that "judges, prosecutors and the public will easily know if an individual has been convicted of a traffic alcohol offense." *Id.* at 10.

■ We think the Committee Report's discussion of the rationale for creating the offense of OWI dictates against reading into the Committee's phrase "lesser alcohol traffic offense" an intent to establish OWI as an offense that can be committed upon a lower threshold of impairment than is required to commit DUI. As the additional language quoted in the preceding paragraph indicates, the Council's focus was on creating a new category of offense in order to give the District—which would

already have found cause to charge a suspect with DUI—a substitute, lower-penalty but manifestly alcohol-related traffic charge that it could offer as an incentive for plea bargaining. The Council was doubtless aware that "the government has wide discretion in the plea bargain process[,]" *Price v. United States*, 531 A.2d 984, 987 (D.C.1987), and that its decision to bargain down to a lesser offense may be driven by factors such as "prosecution resources and the number of cases it is able to prosecute," rather than necessarily by the relative severity of a suspect's alleged conduct. *Id.* at 987–88 (quoting *United States v. Ammidown*, 497 F.2d 615, 621 (D.C.Cir.1974)). We therefore see no reason to assume that the Council expected that the new "lesser" charge, OWI, would be reserved for cases involving the least severe degrees of impairment. Stated differently, because the Council created OWI as a tool for plea-bargaining, and because it is well understood that "a plea bargain is just that, a bargain," *Byrd v. United States*, 801 A.2d 28, 37 (D.C.2002), we cannot read into the OWI statute's lesser-penalty scheme a legislative intent that OWI cover impairment below the threshold required for a conviction of DUI.

And, to the contrary, a closer examination of the statutory penalty scheme persuades us that we should construe OWI as covering the same degree of impairment as DUI. In 1991, the Council amended the statutory penalty provisions to establish that the enhanced penalty for a second DUI offense within a fifteen-year period applies as well for a first DUI offense "following a previous conviction for [OWI]" within the same time period. D.C.Code § 50–2201.05(b)(1)(B); D.C. Law 9–96, 38 D.C.Reg. 7274, 7275–76 (Dec. 9, 1991). The Council likewise amended the provision that describes the enhanced penalty for a third DUI conviction, so that it prescribes the same enhanced penalty for a

second DUI conviction following a previous OWI conviction. *See* D.C.Code § 50–2201.05(b)(1)(C).[10] Thus, for purposes of the DUI penalty scheme, a prior OWI conviction is treated as equivalent in severity to a prior DUI conviction.[11] The DUI penalty scheme thus supports a conclusion that the Council did not intend an OWI conviction to cover less serious conduct than DUI covers. (To be sure, the prescribed penalties for second and third OWI convictions are less than the corresponding penalties for second and third DUI convictions,[12] but the rationale for this is explained by the Committee Report: the lesser penalties create an incentive to plead guilty to OWI, even when the accused has prior traffic alcohol convictions.)

For the foregoing reasons, we accept the parties' argument that the alcohol-impairment threshold is the same for DUI and OWI, and that the trial court erred in instructing the jury that "OWI ... is a lesser standard."[13] As we explain below, however, in light of the evidence presented, this does not mean that the trial court's instructions enabled the jury to premise its "guilty" verdict as to OWI on a lesser level of impairment than was required for a conviction of that offense.

**B. Whether the OWI Instruction Permitted the Jury to Find Appellant Guilty of OWI Upon a Lesser Level of Impairment Than Was Required for Conviction of That Offense**

▮ *Poulnot,* 608 A.2d 134, which interpreted the DUI statute, was the first of this court's decisions to explain the level of impairment required for a DUI conviction. In *Poulnot,* we quoted the holding of the Supreme Court of New Mexico in *State v. Deming,* 66 N.M. 175, 344 P.2d 481 (1959), i.e., that "a person is guilty of driving while under the influence of intoxicating liquor if he or she is *to the slightest degree* ... less able, either mentally or physically or both, to exercise the clear judgment and steady hand necessary to handle as powerful and dangerous a mechanism as a modern automobile with safety to himself and the public." *Id.* at 137 (quoting *Deming,* 344 P.2d at 484–85). We then remarked that "[a]lthough 'appreciable' is, in our view, a more appropriate word than 'slightest,' ... we generally agree with the

---

**10.** In addition, D.C.Code § 50–2201.05(b)(1)(A)(ii) makes the DUI first-offense penalty inapplicable to a person who has a prior OWI conviction.

**11.** The same penalty scheme that applies to DUI convictions also applies to convictions under D.C.Code § 50–2201.05(b)(1)(A)(i)(I) and (III) (respectively, driving "[w]hen the person's alcohol concentration at the time of testing is 0.08 grams or more either per 100 milliliters of blood or per 210 liters of breath or is 0.10 grams or more per 100 milliliters of urine," and driving when "under 21 years of age, when the person's blood, breath, or urine contains any measurable amount of alcohol"). This is an indication that the Council regards those offenses, too, as equivalent in severity to DUI, but there is no question that the elements of these offenses differ from the elements of DUI (and OWI). Our conclusion that OWI and DUI (alcohol) cover the same

conduct is premised on the additional fact that impairment is an element of both of these offenses (but is not an element of the offenses described in D.C.Code § 50–2201.05(b)(1)(A)(i)(I) and (III)).

**12.** *Compare* D.C.Code § 50–2201.05(b)(2) (2001) *and* D.C.Code § 50–2201.05(b)(1)(B) & (C) (2001).

**13.** We hasten to observe, however, that this is a case in which it can fairly be said that the trial court error was invited by both parties. Defense counsel told the court at one point that he thought, "in all fairness, that the degree of impairment that is anticipated with a DUI is slightly higher than the degree of impairment anticipated by the OWI." In addition, counsel for both parties agreed that the trial court should answer "No" to the jury's question whether "if we find him guilty ... of OWI, [they] must ... find him guilty of DUI."

quoted definition of the Supreme Court of New Mexico of the offense here at issue." *Id.* at 138. In opinions following *Poulnot,* we sometimes continued to use the phrase "to the slightest degree" to describe the level of impairment necessary for a DUI conviction. *See, e.g., Karamychev v. District of Columbia,* 772 A.2d 806, 812 (D.C. 2001) ("A person is guilty of DUI if he or she is to the slightest degree ... less able, either mentally or physically or both, to exercise the clear judgment and steady hand necessary to handle as powerful and dangerous a mechanism as a modern automobile with safety to himself or the public."); *Thomas v. District of Columbia,* 942 A.2d 645, 649 (D.C.2008) ("A person is guilty of [driving under the influence] if he or she is to the slightest degree ... less able, either mentally or physically or both, to exercise the clear judgment and steady hand necessary to handle as powerful and dangerous a mechanism as an automobile with safety to himself and the public."). Because the panels in those later cases had no authority to alter the holding of *Poulnot, see M. A. P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971), we understand that they regarded the term "to the slightest degree" (the term generally approved in *Poulnot* ) and the term "appreciabl[y]" (the "more appropriate word" suggested in *Poulnot* ) as equivalent and interchangeable terms. We reiterate, however, that "appreciably" is the more appropriate word; in our view, that is because it connotes primarily that the impairment must be capable of being perceived by the naked senses, whereas "to the slightest degree" (or, to be semantically correct, "even to the slightest degree") may imply a primary focus on a level of impairment that can be discerned only through measurement of the amount of alcohol in the breath or

blood, a measurement focus that already is addressed in D.C.Code § 50–2201.05(b)(1)(A)(i)(I) (prohibiting the operation of a motor vehicle when "the person's alcohol concentration at the time of testing is 0.08 grams or more either per 100 milliliters of blood or per 210 liters of breath or is 0.10 grams or more per 100 milliliters of urine").

Accordingly, our holding that the alcohol-impairment threshold is the same for DUI and OWI means that the standard for both is correctly expressed as that level of impairment at which a person is *appreciably* "less able, either mentally or physically or both, to exercise the clear judgment and steady hand necessary to handle as powerful and dangerous a mechanism as a modern automobile with safety to himself and the public." However, in instructing the jury as to OWI, the trial court told jurors not only that OWI "is a lesser standard," but also that "for OWI, ... it doesn't have to be an appreciable degree...." That instruction was erroneous. But the court also instructed the jury—by our count, four times, including during the last of its instructions—that, to be convicted of OWI, appellant had "just to be impaired in any way or at some level." At least arguably, the terms "in any way" and "appreciably" are synonymous.[14] Even if they are not synonymous in all contexts, however, we conclude that the "impaired in any way or at some level" instruction described a standard that, on the record in this case, was functionally equivalent to the "appreciabl[y] impaired" standard.

To explain: In theory, the term "impaired in any way or at some level" could include a degree of impairment that is beyond unaided human perception (e.g.,

---

14. *See, e.g., Church of Scientology Int'l v. Behar,* 238 F.3d 168, 176 (2d Cir.2001) (reasoning that a statement alleged to be maliciously false caused "no appreciable harm" if it did not harm plaintiffs' reputations "in any way" beyond the harm caused by other statements not alleged to be libelous).

a level of impairment that escapes detection without specialized testing or equipment). In this case, however, the District presented no blood-alcohol, breath-alcohol, or other test evidence. The only evidence the jury had tending to show that appellant was impaired by alcohol was Detective Diliberto's account of what he perceived when he encountered and interacted with appellant on the evening of February 25, 2009: appellant's driving on the wrong side of the street, his difficulty balancing himself while standing, his difficulty focusing, his incoherent communication, his urinating on himself. The jury could, of course, have chosen not to credit Detective Diliberto's account, especially in light of the discrepancies and weaknesses in his testimony that the cross-examination revealed.[15] But, having found that appellant was alcohol-impaired "in any way or at some level,"[16] the jury necessarily found that appellant's impairment was perceptible or noticeable in at least one of the ways Detective Diliberto described—i.e., "appreciably" impaired—notwithstanding the court's instruction that a guilty verdict

of OWI did not require such a finding. Stated differently, because the evidence that the jury must have credited (as indicated by their guilty verdict) could not "rationally lead to a contrary finding with respect to the omitted [instructional] element," *Neder v. United States*, 527 U.S. 1, 19, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), the court's error in omitting to tell the jury that OWI requires appreciable impairment was harmless.[17]

What, though, do we make of the fact that the jury was unable to reach a verdict as to DUI, having been told (correctly) that "DUI requires that one is under the influence of alcohol when one's ability to operate a motor vehicle was impaired to what we call an appreciable degree …?" We obviously cannot know with certainty what the jury was thinking. But we are persuaded by the chronology of the jury's notes and the court's responses that the jury (1) had difficulty distinguishing between the two offenses, and (2) was open to the possibility of convicting appellant of DUI once they had determined that he

---

**15.** Defense counsel urged the jury to find that Detective Diliberto's account was not reliable given the discrepancy between his testimony and his written report about whether appellant was alone in the van; counsel argued that the beer containers could have belonged to a male passenger in the van. Counsel also highlighted the detective's testimony that appellant drove without zigzagging or straddling lanes and was able to pull his van over and stop it without apparent difficulty. In addition, counsel pointed to the detective's having made no effort to determine whether there was a medical cause for appellant's demeanor.

**16.** We may assume that the jury so found since they are presumed to have followed the court's instructions. *See Long v. United States*, 36 A.3d 36, 390 n. 13 (D.C.2012).

**17.** *Cf. Pope v. Illinois*, 481 U.S. 497, 503 n. 6, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987) (although a reviewing court cannot "retrace the

jury's deliberative processes," it can affirm a conviction despite an instructional error if "the facts found by the jury were such that it is clear beyond a reasonable doubt that if the jury had never heard the impermissible instruction[,] its verdict would have been the same"); *Rose v. Clark*, 478 U.S. 570, 580–81, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) ("In many cases, the predicate facts conclusively establish intent, so that no rational jury could find that the defendant committed the relevant criminal act but did not intend to cause injury."); *Fortson v. United States*, 979 A.2d 643, 661 (D.C.2009) ("We conclude that the erroneous 'natural and probable consequences' instruction was harmless beyond a reasonable doubt as to [appellant] Ellis, because we see no reasonable possibility that, having credited the evidence that Ellis participated with Fortson in the attack whose results Dr. Juste graphically described, the jury would have failed to convict Ellis of second-degree murder if the erroneous instruction had not been given.").

was guilty of OWI,[18] until the court told them that the impairment necessary for a DUI conviction must be "considerable" (while also telling them that the standard for OWI was "lesser"). "Considerable" denotes "large in amount, extent, or degree." Merriam–Webster Dictionary, *available at* http://www.merriam-webster.com/.[19] We recognize that the court also told the jurors that the terms "appreciable," "enough to be perceived or estimated," "noticeable," and "considerable" were "trying to be alternative to express the same concept." We think, however, that, together with the court's reference to OWI having a "lesser standard," the court's use of the word "considerable" appeared to ratchet up the threshold for conviction of DUI, so that a conviction of DUI appeared to require more than "appreciable" impairment. We are satisfied that this explains the jury's inability to reach a verdict as to DUI, and that their inability to do so does not call into question appellant's OWI conviction.[20]

We have considered whether our reasoning and our conclusion conflict with the Supreme Court's reasoning in *Bollenbach v. United States*, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350 (1946). We are satisfied that they do not. Bollenbach was charged with transporting securities in interstate commerce knowing them to have been sto-

len, and with conspiring to commit that offense. 326 U.S. at 608, 66 S.Ct. 402. The securities in question had been stolen in Minneapolis and transported to New York, and there was no dispute that Bollenbach had helped to dispose of them there. *Id.* After seven days of deliberating, the jury was "hopelessly deadlocked." *Id.* at 609, 66 S.Ct. 402. A juror asked, "Can any act of conspiracy be performed after the crime is committed?" *Id.* Another note from the jury asked, "If the defendant were aware that the bonds which he aided in disposing of were stolen does that knowledge make him guilty on the second [i.e., conspiracy] count[?]" *Id.* The court did not answer the questions directly, but instructed the jury that "that possession of stolen property in another State than that in which it was stolen shortly after the theft raises a presumption that the possessor was the thief and transported stolen property in interstate commerce." *Id.* Five minutes later, the jury returned a guilty verdict on the conspiracy count. *Id.* at 610, 66 S.Ct. 402.

Before the Supreme Court, no one disputed that the instruction was erroneous (as there was no such presumption of transport in interstate commerce), but, in the words of the Court, the government "asks us to pay no attention to this palpa-

18. Recall that the jury's note asked, "If we find the Defendant operated a motor vehicle in the District of Columbia while he was impaired by alcohol, must we find that he was guilty of driving under the influence of alcohol?"

19. This is doubtless why defense counsel told the court that he preferred the alternative definition that the court suggested, which was taken from Dictionary.com ("sufficient to be readily perceived or estimated, *considerable* "), over the Webster's Dictionary definition that the court used in responding to the jury's first note. And, as already described, the prosecutor objected that use of the word "considerable" would "rais[e] the burden on

DUI" and "add a burden upon the Government," and the court itself observed that "considerable" was "perhaps even a stronger word" that "implies something greater than" the phrase "enough to be perceived" connotes.

20. An alternative explanation for the jury's having convicted appellant of OWI while failing to reach a verdict on the DUI count is simply that these were inconsistent "verdicts." *See District of Columbia v. Tulin*, 994 A.2d 788, 798 (D.C.2010) (citing *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932) ("Consistency in the [criminal case] verdict is not necessary.")).

bly erroneous answer by the judge to the jury's inquiry as to guilt on the charge of conspiracy." *Id.* at 611, 66 S.Ct. 402. The Court reasoned that it could do that "only by assuming that the jury paid no attention to it[.]" The Court rejected that approach, stating that "[t]o do so [would be] to disregard the significance of the course of events, as revealed by the record, after the case went to the jury." *Id.* The jury, the Court observed, "was obviously in doubt as to Bollenbach's participation in the theft of the securities in Minneapolis and their transportation to New York," and the jury's inquiries, "particularly the last written inquiry in reply to which the untenable "presumption" was given, clearly indicated that the jurors were confused concerning the relation of knowingly disposing of stolen securities after their interstate journey had ended to the charge of conspiring to transport such securities." *Id.* at 612–13, 66 S.Ct. 402. The Court interpreted the trial judge's erroneous instruction "to mean that the jury was permitted to find Bollenbach 'guilty of a conspiracy to transport stolen notes if he joined in their disposal after the transportation had ended.'" *Id.* at 613, 66 S.Ct. 402. The government, by contrast, sought "to sustain the conviction on the basis that "the charge did not mean what it said, and that, while the jury asked one question, the trial judge replied to another." *Id.* The Court rejected the government's position, saying that "[a] conviction ought not to rest on an equivocal direction to the jury on a basic issue" and rejecting the suggestion that "the lay jury will know enough to disregard the judge's bad law if in fact he misguides them." *Id.* at 613–14, 66 S.Ct. 402.

The Court rejected the government's argument that "the sting of error is extracted because there was proof, other than the erroneous 'presumption,' on the issue of Bollenbach's participation in the wrongdoing before the transportation of the stolen securities had ended." *Id.* at 614, 66 S.Ct. 402. The Court explained:

> This is to disregard the vital fact that for seven hours the jury was unable to find guilt in the light of the main charge, but reached a verdict of guilty under the conspiracy count five minutes after their inquiry was answered by an untenable legal proposition. It would indeed be a long jump at guessing to be confident that the jury did not rely on the erroneous "presumption."

*Id.* at 614, 66 S.Ct. 402. The Court issued a reminder, "[i]n view of the Government's insistence that there is abundant evidence to indicate that Bollenbach was implicated in the criminal enterprise from the beginning," that "the question is not whether guilt may be spelt out of a record, but whether guilt has been found by a jury according to the procedure and standards appropriate for criminal trials in the federal courts." *Id.* Accordingly, the Court said, it could not "treat the manifest misdirection in the circumstances of this case as one of those 'technical errors' which 'do not affect the substantial rights of the parties' and must therefore be disregarded." *Id.* The Court also warned against "substitut[ing] the belief of appellate judges in the guilt of an accused, however justifiably engendered by the dead record, for ascertainment of guilt by a jury under appropriate judicial guidance, however cumbersome that process may be." *Id.* at 615, 66 S.Ct. 402.

It is true that in the instant case, as in *Bollenbach,* the jury returned a verdict not long after receiving the erroneous instruction. However, here, "the course of events, as revealed by the record, after the case went to the jury," *id.* at 611, 66 S.Ct. 402 was significantly different from the course of events in *Bollenbach.* As the Supreme Court emphasized, the *Bollenbach* jury's confusion focused on the con-

spiracy charge, as to which they convicted almost immediately after they received the erroneous instruction.[21] By contrast, the record in this case shows that the jury was prepared, even before the erroneous instruction, to convict of OWI (asking, in its third note, "If we find the Defendant operated a motor vehicle in the District of Columbia while he was impaired by alcohol, must we find that he was guilty of driving under the influence of alcohol?"). The jury's fourth-note question ("does 'appreciable degree' mean merely noticeable or must it be something more than that?"), which occasioned the erroneous instructions that "OWI ... is a lesser standard" and that "[t]o show that somebody is impaired for OWI, it doesn't have to be an appreciable degree," was focused on obtaining clarity about DUI, as to which the jury was never able to reach a verdict. The course of events here persuades us, beyond a reasonable doubt, that the erroneous instruction did not contribute to the OWI conviction.

Nor does our conclusion in this opinion rely on an assessment that "abundant evidence" was presented to the jury, or on our own "belief ... in the guilt of the accused." *Id.* at 615, 66 S.Ct. 402.[22] Rather, our holding is premised on (1) the fact that the *only* evidence the jury heard that supported the charge of impairment was testimony about conduct that demonstrated impairment that was appreciable as a matter of law, and, therefore, (2) our ability to say that, by finding beyond a reasonable doubt that appellant was "impaired in any way" on the basis of the evidence presented, the jury necessarily found that appellant was "appreciably" impaired. Thus, there was "an ascertainment of guilt by a jury under ... judicial guidance" (the "in any way" instruction) that, *in light of the record evidence,* was not inappropriate as to the charge of OWI. *Bollenbach,* 326 U.S. at 615, 66 S.Ct. 402.

\* \* \*

To summarize, we hold that the alcohol-impairment threshold is the same for DUI and OWI. The trial court therefore erred in instructing the jury that "OWI ... is a lesser standard," that a defendant's impairment need not have been "appreciable" for him to be convicted of OWI, and that a conviction of DUI requires "considerable" impairment. While we think it likely that the erroneous instruction in this case contributed to the jury's being unable to reach a verdict as to the DUI charge, we can "sa[y] beyond a reasonable doubt that the jury's [OWI] verdict in this case was not affected by the erroneous instruction." *Pope,* 481 U.S. at 502, 107 S.Ct. 1918. Accordingly, the judgment of conviction is

*Affirmed.*

Opinion concurring in part and dissenting in part by Associate Judge Beckwith.

BECKWITH, Associate Judge, concurring in part and dissenting in part:

There can hardly be a more crucial moment in a trial than when deliberating jurors who are confused about a matter central to a defendant's guilt or innocence turn to the court for help in understanding their instructions. In this case, the delib-

---

**21.** *Cf. United States v. Hall,* 346 F.2d 875, 879 (2d Cir.1965) (noting that in *Bollenbach,* the trial court gave a "palpably erroneous instruction respecting the very matter that perplexed the jury").

**22.** Indeed, in light of shortcomings in the government's evidence discussed in note 15

*supra,* we do not regard the District's evidence as overwhelming (although it certainly was sufficient for conviction). This is not a case where, acting reasonably, the jury *could not* have failed to find appreciable impairment; rather, this is a case in which the OWI verdict tells us that the jury *did not* fail to find appreciable impairment.

erating jury asked a series of questions about the degree of impairment required for the two charges against appellant—Driving Under the Influence (DUI) and Operating a Vehicle While Intoxicated (OWI). Each subsequent question revealed that the court's responses and instructional modifications had failed to clarify things. While in such circumstances the trial court must clear away the jury's confusion "with concrete accuracy," *Bollenbach v. United States*, 326 U.S. 607, 612–13, 66 S.Ct. 402, 90 L.Ed. 350 (1946), the court's efforts to do so here misstated the law on the matter causing all the confusion and set the stage for a conviction of OWI based on less than the requisite level of impairment.

I agree with my colleagues that the trial court erred in instructing the jury regarding the level of impairment the government was required to prove for DUI and OWI. But I cannot agree that the court's erroneous instructions on an essential element of the offense of which appellant was convicted were harmless beyond a reasonable doubt, or harmless under any standard. Where the jurors in this case expressed increasing confusion about the element of impairment even as the trial court tried to clarify things, where they deadlocked on a DUI count that the court repeatedly (and accurately) told them required an "appreciable" level of impairment or its equivalent, where the

OWI count required the same "appreciable" level of impairment as the count on which the jury deadlocked, and where the trial court straightforwardly (but inaccurately) told the jury that OWI did *not* require an "appreciable" or "noticeable" degree of impairment, there is every reason to fear that the jury may have convicted appellant of OWI without finding the required level of impairment.

The majority opinion concludes that the error in this case was harmless beyond a reasonable doubt based primarily on two lines of reasoning.[1] At the outset, it determines that the instructional error in this case had to be harmless because the government's evidence in this case was not susceptible of a finding of anything less than appreciable impairment. *Ante* at 1267–69. It then explains why the jury's deadlock on DUI does not undercut that conclusion, even though the two offenses require the same degree of impairment. Specifically, the deadlock raises no red flags with respect to the jury's conviction on OWI because the court's use of the purportedly more stringent term "considerable" in its DUI instruction caused the jury to deadlock on DUI when it would otherwise have found "appreciable" impairment beyond a reasonable doubt. Thus, in the majority's view, Mr. Taylor appears to have benefited from, not been

---

1. Because the trial court's instruction on OWI lowered the government's burden of proof on a critical element of the offense, I agree with my colleagues that we should deem the instructional error to be reversible unless we conclude that it was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (stating harmless error standard for constitutional error); *see also Neder v. United States*, 527 U.S. 1, 15, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (applying *Chapman* standard where jury instructions omitted an element of the offense); *Wilson–Bey v. United*

*States*, 903 A.2d 818, 843–44 (D.C.2006) (applying *Chapman* standard where instruction omitted essential mens rea elements). Even were we to apply the standard for nonconstitutional error, it is not possible to say, given the jury's confusion, the deadlock on the other count, and the nature of the erroneous instruction, that the error was "sufficiently insignificant to give us fair assurance that the judgment was not substantially swayed by it." *Brooks v. United States*, 599 A.2d 1094, 1102 (D.C.1991) (citing *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

harmed by, the trial court's instructions. *Ante* at 1268–70.

The majority opinion first explains why the nature of the government's evidence, which consisted primarily of Detective Diliberto's description of events surrounding the traffic stop, ensured that the jury did not resort to the erroneous burden-diluting language to find appellant guilty of OWI under "a lesser standard" than an appreciable degree of impairment. That is, the jury must have found some level of impairment because the court instructed the jury that Mr. Taylor had only "to be impaired in any way or at some level"—phrasing the majority opinion states is "[a]t least arguably ... synonymous" with the correct standard of "appreciably," *ante* at 1267—and because "the *only* evidence the jury heard that supported the charge of impairment was testimony about conduct that demonstrated impairment that was appreciable as a matter of law." *Ante* at 1271 (emphasis in original); *see also ante* at 1268 (referring to Mr. Taylor's "driving on the wrong side of the street, his difficulty balancing himself while standing, his difficulty focusing, his incoherent communication, his urinating on himself"). Thus, the evidence showed either an appreciable degree of impairment if the jurors believed Detective Diliberto, or no level of impairment if they did not believe him, but it could not reasonably be construed as demonstrating a level of impairment that was less than noticeable or appreciable. *Ante* at 1268–69.

The court's conception of what "the jury necessarily found" as "a matter of law"—namely, "that appellant's impairment was perceptible or noticeable in at least one of the ways Detective Diliberto described," *ante* at 1268—disregards the possibility, perhaps the likelihood, that the jurors undertook a more complex evaluation of the evidence that readily could have yielded a finding of less-than-appreciable impairment.[2] In the words of Learned Hand, "[i]t is no reason for refusing to accept everything that a witness says, because you do not believe all of it; nothing is more common in all kinds of judicial decisions than to believe some and not all." *N.L.R.B. v. Universal Camera Corp.,* 179 F.2d 749, 754 (2d Cir.1950), *vacated on other grounds,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). A finder of fact is free to pick and choose among the proofs at trial, crediting some, discrediting some, or deciding the truth lies somewhere in between. *See, e.g., Harris v. United States,* 834 A.2d 106, 128 (D.C.2003) (observing that the jury found a witness "credible in part but not wholly credible" and noting that the exclusion of corroborative evidence "rarely will be harmless error" where a jury "has rejected part of a witness's uncorroborated story and accepted other parts"); *Lavender v. Kurn,* 327 U.S. 645, 653, 66 S.Ct. 740, 90 L.Ed. 916 (1946) (stating that "where ... there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion").

---

2. It is worth noting, as an initial matter, that while the "impaired in any way or at some level" phrasing may be the functional equivalent of the "appreciably impaired" standard, it is hard to say what meaning the jurors would have assigned to the phrase in a case in which the trial court specifically instructed them, in response to their fourth question seeking guidance on the matter, that the two are *not* the same and that "impaired in any way or at some level" does *not* require a finding of impairment to "an appreciable degree or a considerable degree or a noticeable degree." *See Hunt v. United States,* 729 A.2d 322, 325 (D.C.1999) ("In reviewing jury instructions, we must look at the instructions as a whole in assessing whether they constituted prejudicial error.") (citation and internal quotations omitted).

In this case, the jury's sifting and sorting of the evidence could have led it to conclude, consistent with the defense theory in this case, that the police officer was exaggerating when he described Mr. Taylor's behavior on the night of February 25, 2009. That is, the jury could have concluded that Detective Diliberto's characterization of events had the hallmarks of after-the-fact justification, a portrayal defense counsel worked hard to bolster in closing argument. It could have found it difficult to reconcile Detective Diliberto's description of a thoroughly intoxicated man who could barely speak or stand up with the evidence that Mr. Taylor was driving within the speed limit without weaving or drifting and that he pulled over promptly when signaled to do so. This evidence, combined with other anomalies in the government's case,[3] could have led the jurors to harbor doubts about whether Mr. Taylor was as impaired as the officer said he was while still concluding that Mr. Taylor may well have been drinking that night and that the police had some grounds for pulling him over. This scenario, where the only degree of impairment upon which the jury agreed was something less than an appreciable degree, seems even more likely given the affirmative evidence that the jury had some qualms about the government's evidence—namely, the jury's deadlock on the DUI count and its many questions about the required level of impairment. Any analy-

sis of the harm caused by the erroneous jury instruction in this case must contemplate the very real possibility that the jurors followed this logical path, or one like it, to conviction on the OWI count.[4]

Turning to the assertion that the jury deadlocked instead of convicting Mr. Taylor of DUI because it must have understood the term "considerable" to mean something greater than "appreciable," this conclusion on the part of the majority turns out to be vital to a finding of harmlessness in this case. It is vital because if this reading of the jury's deadlock on DUI is wrong—that is, if there is a reasonable chance the jury deadlocked on DUI based upon an understanding of "appreciable" that was *not* ratcheted up by the inclusion of the term "considerable"—it would be hard to fairly conclude that the jury convicted appellant of OWI without resorting to the diluted standard of impairment contained in the court's final response to the jury's questions.[5] In other words, if the jury deadlocked on DUI simply because some jurors believed the government failed to prove an "appreciable" as opposed to a "considerable" degree of impairment, it is reasonable to conclude that a properly instructed jury also would have deadlocked on OWI, which requires the same degree of impairment. That it did not deadlock on OWI is then a strong indication that it was lured by the trial court's description of OWI as "a lesser standard" than "appreciable."

3. These include, for example, the officer's statement in his police report, contrary to his trial testimony, that Mr. Taylor had a passenger in his vehicle. *See also ante* at 1268 n. 15.

4. It is also possible, of course, that the jurors could not agree in their interpretation of the evidence and that their verdicts were compromise verdicts that were facilitated by the erroneous instruction permitting conviction of OWI on a finding of less than appreciable impairment. *See Harris v. United States*, 834

A.2d 106, 127–28 (D.C.2003) (recognizing possibility of compromise verdict in analysis of harmless error) (citing *Williamson v. State*, 692 P.2d 965, 971 n. 6 (Alaska Ct.App.1984)).

5. In its final instruction to the jury, this one in response to the jury's fourth note (inquiring, "does 'appreciable degree' mean merely noticeable or must it be something more than that?"), the court stated that there is "a lesser standard" for OWI and that "it doesn't have to be an appreciable degree or a considerable degree or a noticeable degree."

The assumption that the deadlock on DUI stemmed from the court's use of the term "considerable" in its attempt to define an "appreciable" degree of impairment is unjustified for several reasons. First, in a case in which the jury's confusion was palpable and persistent, the notion that the subtle difference between the words "considerable" and "appreciable" caused a jury to deadlock rather than convict on DUI is an unduly speculative basis for deeming a burden-lowering jury instruction to be harmless, not to mention harmless beyond a reasonable doubt. *Cf. Yeager v. United States,* 557 U.S. 110, 121–22, 129 S.Ct. 2360, 174 L.Ed.2d 78 (2009) (stating, in a case about issue preclusion, that "it is guesswork" to "ascribe meaning to a hung count" and that "[a] host of reasons— sharp disagreement, confusion about the issues, exhaustion after a long trial, to name but a few—could work alone or in tandem to cause a jury to hang"); *Odemns v. United States,* 901 A.2d 770, 784 (D.C. 2006) (stating that whether a jury would have convicted absent an erroneously admitted piece of evidence "is speculation which we are neither prepared nor willing to undertake") (quoting *Fox v. United States,* 421 A.2d 9, 14 (D.C.1980)); *In re Ty.B.,* 878 A.2d 1255, 1266 (D.C.2005). Second, the record contains additional clues that undermine the supposition that the jury would have construed "considerably" to mean something greater than "appreciable." These include the extent to which the trial court made clear that "appreciable" was the baseline term that all of the other synonyms, which the court said

were "pretty much interchangeable," were meant to help define, and the court's attendant use of three other synonymous words or phrases—"enough to be perceived," "enough to be . . . estimated," and "noticeable"—that arguably offset any ratcheting-up effect of "considerable." And third, the jury indicated in its third note, before the court ever uttered the word "considerable," that it was already struggling with the DUI count when it asked whether it must convict of DUI if it convicts of OWI. If that was the case, it is difficult to say with any confidence that the subsequent addition of the word "considerable" to the mix was the thing that caused the jury to deadlock.

If what really happened in this case was that the jury deadlocked on DUI based on an understanding of "appreciable" that equated with "noticeable" and "perceptible," and that it convicted on OWI because the court's instructions said it required something less than an "appreciable" or "noticeable" degree of impairment, then the prejudice caused by the erroneous instruction was demonstrable. This scenario seems equally likely—indeed more likely—given the entirety of the court's instructions to the jury and the many indications that the jury had some doubts about the government's case.[6]

This is not, in my view, the kind of case in which the evidence is so clear that it admits of no other interpretation, and where we can therefore know, as a matter of law, what kind of impairment the jury necessarily found.[7] It is in many ways the opposite of such a case. Nothing in this

6. Given that it was the trial court's error that injected the word "considerable" into the jury's deliberations, there is also something unsettling about relying on the perceived effect of that word to defeat a finding of harm in this case.

7. The court relies upon *Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), in holding that "because the evidence

that the jury must have credited (as indicated by their guilty verdict) could not 'rationally lead to a contrary finding with respect to the omitted [instructional] element,' the trial court's error in failing to tell the jury that OWI requires appreciable impairment was harmless." *Ante* at 1268 (quoting *Neder,* 527 U.S. at 19, 119 S.Ct. 1827). In *Neder,* the finding at issue was the materiality of Mr.

record gives me the confidence that my colleagues share that the OWI conviction must have been founded upon the required degree of impairment and that we can therefore say, beyond a reasonable doubt, that it was unaffected by the erroneous instruction. As I cannot find the error harmless, I would reverse the judgment of conviction and remand for a new trial.

Neder's alleged false statements, an issue that, in light of Mr. Neder's failure to report more than $5 million in income, was "incontrovertibly establish[ed]" by the evidence at trial and was wholly undisputed at trial and on appeal. *Id.* at 1266. Here, by contrast, Mr. Taylor vehemently contested the evidence of impairment and this issue was both the focus of the jury's attention and at the heart of guilt or innocence.

Relatedly, while the majority concludes that the jury's third question to the trial court—"If we find the Defendant operated a motor vehicle in the District of Columbia while he was impaired by alcohol, must we find that he was guilty of driving under the influence of alcohol?"—shows the jury was prepared to convict Mr. Taylor of OWI from the outset, *ante* at 1271, the question also appears to be the jury's—or perhaps just one juror's—rearticulation of the question the jury had just posed about how the two crimes are different. What is more clear from the record are the stark indications that the jurors were confused and in disagreement about whether the government proved an "appreciable" degree of impairment in this case, as evidenced by their deadlock on the DUI count. This fact alone should strongly undermine any confidence that the jury unanimously agreed Mr. Taylor was impaired to an appreciable degree.